# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE ESTATE OF PERRY WEEKS,
            *Plaintiff-Appellant,*

v.

ADVANCE STORES COMPANY,
INCORPORATED; COMPREHENSIVE
MEDICAL EXPENSE BENEFIT PLAN, For
employees of Advance Stores;
EMPLOYEE GROUP LIFE INSURANCE &
LONG TERM DISABILITY,
            *Defendants-Appellees.*

No. 03-1926

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CA-02-724-7)

Argued: February 26, 2004

Decided: June 1, 2004

Before LUTTIG, WILLIAMS, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** William H. Cleaveland, Roanoke, Virginia, for Appellant.
Joseph Michael Rainsbury, FLIPPIN, DENSMORE, MORSE & JES-
SEE, Roanoke, Virginia, for Appellees. **ON BRIEF:** Kevin P. Oddo,

Laura Effel, FLIPPIN, DENSMORE, MORSE & JESSEE, Roanoke, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Plaintiff-appellant Connie Weeks ("Mrs. Weeks"), as the executrix of the estate of her late son Perry Weeks ("Weeks"), appeals from the judgment of the United States District Court for the Western District of Virginia granting summary judgment for defendants-appellees Advance Stores Co., Inc., the Corview Comprehensive Medical Expense Benefit Plan, the Prudential Employee Group Life Insurance Plan and Prudential Long Term Disability Plan (collectively "Defendants") on her claims that Defendants breached their duties under the Consolidated Omnibus Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1161 *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, by failing to provide Weeks with notice of his right to continue coverage under both his health and life insurance plans and by misleading both him and Mrs. Weeks as to the termination of benefits under each plan. The district court granted Defendants summary judgment on the bases that Advance Stores (1) provided Weeks with notice of his right to continue coverage under his health insurance plan as required under ERISA and COBRA, (2) had no such duty with regard to Weeks' ERISA life insurance plan and (3) provided Weeks sufficient information about his right to continue coverage under both his medical and life insurance plans that, had he and Mrs. Weeks reviewed it, would have corrected any alleged misstatements made by Karen Yates, a human resources manager whom it determined did not qualify as an ERISA fiduciary.

On appeal, Mrs. Weeks argues that Defendants should not have been granted summary judgment because Advance Stores, as the plan

administrator, failed to provide Weeks a summary description of his life insurance plan as required under ERISA § 1024(b)(1). Mrs. Weeks also argues that the grant of summary judgment was improper because, irrespective of whether COBRA requires life insurance plan administrators to inform beneficiaries of their right to continue coverage under an ERISA life insurance plan, such a duty was created by Advance Stores' customary practice of informing employees about this right. Lastly, Mrs. Weeks argues that the district court erred by concluding that she and Weeks were not entitled to rely on Yates' alleged misstatements about the termination of coverage under Weeks' health and life insurance plans because Yates did not qualify as an ERISA fiduciary. For the reasons discussed below, we affirm the district court's grant of summary judgment.

## I.

Perry Weeks was a full-time employee of Advance Stores from October 17, 1999 to March 23, 2000. He was initially hired to work at Advance Stores' Roanoke distribution center but was later transferred to the road crew. On his first day of employment with Advance Stores, Karen Yates, the human resources manager at Advance Stores' Roanoke distribution center, provided Weeks with an employee handbook and her business card, which contained her contact information should he have any questions concerning the information contained in the employee handbook. Upon receiving this material, Weeks signed an acknowledgment form confirming that Yates gave him a copy of the employee handbook. The employee handbook provided to Weeks, in addition to summarizing the benefits available to employees, stated in pertinent part, under the "In General" section, that "[c]omplete copies of all [health and life insurance] plan document(s) are available from the Benefits Department" and that "[e]mployees have the right to request these documents for review at any time." J.A. 500. It also stated, under the "Life Insurance" section, that "[o]ptional Life/AD&D insurance is portable," meaning that employees could continue this coverage upon termination of their employment with Advance Stores should they so desire. *Id.* at 501. To "port" their coverage, the employee handbook explained, employees had to "contact the insurance company directly within 30 days of separating from employment with Advance [Stores]." *Id.*

During his five month employment with Advance Stores, Weeks purchased medical insurance under the Corview Point of Service Health Plan, which was sponsored and administered by Advance Stores. Under the terms of this plan, Weeks' medical coverage terminated the last day of the month in which he ceased being a "full-time, active employee" of Advance Stores. In accordance with COBRA, however, the plan allowed Perry to continue coverage—at his own expense—after he ceased being employed with Advance Stores. To continue coverage, Weeks had to submit an application within sixty days of his coverage termination date or the date notice of his right to continue coverage was sent, whichever was later.

In addition to medical insurance, Weeks purchased life insurance under the Prudential Term Life Coverage Plan. Under this plan, which Advance Stores partly administered, Weeks was allowed to purchase life insurance under Advance Stores' basic life policy and an optional policy that provided additional coverage. Weeks purchased coverage under Advance Stores' basic life policy, which provided him coverage for an amount equal to two times his annual earnings, and under an optional policy, which provided him up to $100,000 in coverage. Under the terms of these policies, if Weeks failed to apply for the continuation of coverage, he would cease being covered the day his employment with Advance Stores ended. To exercise his right to continue coverage under these policies, Weeks had to submit his application within thirty-one days of his termination as an Advance Stores employee.

On March 23, 2000, Weeks resigned from his employment with Advance Stores. Thus, under the terms of his medical plan, his medical coverage terminated on March 31, 2000 if he failed to continue coverage within the applicable period. Under his life insurance plan, he ceased being covered on the same day of his resignation, March 23rd, if he failed to continue coverage within the applicable period.

On March 29, 2000, Weeks, who had a history of leukemia, suffered a relapse. As a result, on March 30th, Mr. and Mrs. Weeks drove Weeks from their home in Vinton, VA to St. Jude's Children's Research Hospital in Memphis, Tennessee, where Weeks and his parents remained until his death on June 9, 2000. Once at St. Jude's Hospital, it became apparent that Weeks would need to undergo a bone

marrow transplant and remain hospitalized for a significant period. Given the expense entailed with such treatment, Weeks instructed Mrs. Weeks to contact Advance Stores to determine whether his medical or life insurance plans would cover any of the costs. Consequently, in early April 2000, Mrs. Weeks contacted her niece, Jennifer Hoback, whose husband was an employee of Advance Stores, to determine the appropriate person to contact at Advance Stores. Hoback told Mrs. Weeks to contact Yates, whom she believed to be generally knowledgeable about benefits available to Advance Stores employees.

After speaking with Hoback, Mrs. Weeks immediately contacted Yates, who informed her that coverage under Weeks' medical and life insurance plans terminated on his last day of employment. In doing so, however, Yates failed to inform Mrs. Weeks that Weeks was still eligible to apply for the continuation of coverage under both plans. Based on her conversation with Yates, Mrs. Weeks assumed that none of Weeks' medical expenses would be covered under the plans he purchased through his employment with Advance Stores.

At or about the same time that Mrs. Weeks spoke to Yates, Advance Stores mailed a letter to Mrs. Weeks' Vinton, VA address, which Weeks listed as his place of residence, informing Weeks, as required by ERISA, of his right to continue coverage under his medical plan. However, because Mrs. Weeks remained by Weeks' bedside until his death and because she only instructed her daughter to open and pay her monthly bills, Mrs. Weeks did not become aware of this letter and its content until after Weeks' death. Advance Stores also alleges that a similar letter, in accordance with its customary practice, was mailed to Mrs. Weeks' home address informing Weeks of his right to continue coverage under his life insurance plan. Mrs. Weeks, however, contends that she never received such a letter.

In September 2000, Mrs. Weeks received a package from Advance Stores containing information about Weeks' life insurance plan. After reviewing its content, Mrs. Weeks realized that Weeks could have continued his coverage under this plan when she spoke to Yates, who told her that all coverage had been terminated. Believing that she and Weeks had been misled by Yates, Mrs. Weeks contacted Richard Robbins, whose telephone number was listed in the package material,

and informed him of her concerns. After speaking with Robbins, Mrs. Weeks looked through Weeks' personal belongings and determined that Weeks had indeed been given an employee handbook, employee benefit summary and a summary description of his medical plan. She was, however, unable to locate a summary description of Weeks' life insurance plan.

After her initial conversation with Robbins, Mrs. Weeks contacted him several times to ascertain whether any of Weeks' medical expenses would be covered under his medical or life insurance plans. After repeatedly telling Mrs. Weeks that he needed to further investigate the matter, Robbins instructed Mrs. Weeks to put her concerns in a letter. Accordingly, on November 27, 2000, Mrs. Weeks wrote a letter to Advance Stores detailing her concerns and subsequently spoke with Debra Caldwell, one of Advance Stores' vice presidents. After speaking with Caldwell, Mrs. Weeks was informed that Weeks' medical expenses would not be covered under his medical or life insurance plans because he failed to continue coverage within the applicable periods.[1]

On June 10, 2002, Mrs. Weeks commenced the present action against Defendants in the United States District Court for the Western District of Virginia. In her complaint, Mrs. Weeks alleged that Defendants breached their fiduciary duties under ERISA by failing to "disclose information related to the notification of continuation of available health and life insurance benefits" and by misinforming her that Weeks "was not entitled to any continuation of benefits beyond the 31st of March 2000, [statements which] . . . [she] and [Weeks relied upon] to their detriment." *Id.* at 10. After both parties filed cross-motions for summary judgment, the district court granted Defendants summary judgment. This appeal followed.

---

[1]To assist Mr. and Mrs. Weeks in paying Weeks' medical expenses, St. Jude's Hospital provided them with charitable services. In addition, a portion of Weeks' medical expenses were covered under Mr. Weeks' personal insurance plan.

## II.

## A.

"We review a district court's grant of summary judgment *de novo*." *Young v. Prince George's County*, 355 F.3d 751, 754 (4th Cir. 2004)(quoting *Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508 (4th Cir. 2002)). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## B.

Mrs. Weeks first argues that Defendants should not have been granted summary judgment because they failed to provide Weeks with a summary description of his life insurance plan within ninety days of his becoming a plan participant as required under ERISA § 1024(b)(1). Defendants argue, and we agree, that this issue should not be reached on appeal because Mrs. Weeks failed to raise it before the district court.

This Court does not consider issues raised for the first time on appeal absent exceptional circumstances of plain error or a fundamental miscarriage of justice. *Washington Metro. Area Transit Auth. v. Precision Small Engines*, 227 F.3d 224, 227-28 (4th Cir. 2000); *Grenier v. Cynamid Plastics, Inc.*, 70 F.3d 667, 678 (4th Cir. 1995). Thus, a party's failure to raise an issue in a complaint or opposition to summary judgment constitutes a waiver of that issue. Indeed, "[e]ven an issue raised in the complaint but ignored at summary judgment may be deemed waived." *Grenier*, 70 F.3d at 678. "This is because 'an appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court.'" *Id.* (quoting *Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978)). Here, we find that Mrs. Weeks failed to raise her ERISA § 1024(b)(1) argument in both her complaint and opposition to summary judgment.

In her complaint, Mrs. Weeks only argued that Defendants breached their duties under ERISA "by failing to notify [Weeks] of

his right to continuation of health and life insurance benefits, and by misrepresenting that [Weeks] was not entitled to any . . . benefits" after March 31, 2000. J.A. 11. In her opposition to summary judgment, although stating in passing that Weeks never received a summary description of his life insurance plan, Mrs. Weeks never asserted that Defendants violated ERISA § 1024(b)(1). Indeed, Mrs. Weeks never expressly cited or mentioned this subsection of ERISA. Instead, Mrs. Weeks, after stating that Weeks never received a summary description of his life insurance plan, immediately returned to her claim that Weeks was never notified of his right to continue coverage under his health and life insurance plans. We find it odd that Mrs. Weeks would not cite or mention a subsection of ERISA that she now expressly relies upon if her intent was to raise this argument below.

Accordingly, because there are no exceptional circumstances of plain error or a fundamental miscarriage of justice, we deem Mrs. Weeks' argument waived and thus decline to consider it.

C.

Mrs. Weeks next argues that Advance Stores' customary practice of notifying terminated employees of their right to continue their life insurance coverage created an affirmative duty to provide Weeks with such notice. As with Mrs. Weeks' first argument, Defendants argue that Mrs. Weeks waived this argument by failing to raise it before the district court. We agree.

In arguing that Advance Stores had a duty to notify Weeks of his right to continue his life insurance coverage, Mrs. Weeks never asserted, directly or indirectly, that such a duty was based on Advance Stores' customary practice of providing terminated employees with such notice. Indeed, Mrs. Weeks never made mention of Advance Stores' practice. In her complaint, Mrs. Weeks solely stated that her action was being brought pursuant to ERISA. In her opposition to summary judgment, Mrs. Weeks only cited COBRA as the basis for her argument that Advance Stores had a duty to inform Weeks of his right to continue coverage under both his health and life insurance plans. *Id.* at 52 ("There is a factual dispute over whether proper notice was sent pursuant to . . . [COBRA]"); *id.* at 71 ("There exist genuine issues of material fact that are in dispute, including . . . the question

of whether the defendants breached a duty to notify the plaintiff of his right to continuation of benefits under 'COBRA' . . . ."). Given that Mrs. Weeks failed to raise this argument in either her complaint or opposition to summary judgment, we find that she waived it and therefore decline to consider it.

### III.

Having concluded that Mrs. Weeks' first two arguments have been waived, we now turn to the one argument that she properly preserved for appeal. Mrs. Weeks argues that the district court erred by concluding that she and Weeks were not entitled to rely on Yates' statements as to the termination of Weeks' medical and life insurance coverage because Yates did not qualify as an ERISA fiduciary. We disagree.

Section 1002(21)(A) of ERISA provides that "a person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she:

i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,

ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or

iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Thus, "[u]nlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)(quoting *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F.Supp. 869, 881 (S.D.N.Y. 1997)). Accordingly, our determination of whether a person qualifies as an ERISA fiduciary is based on a person's job activities rather than job title. Moreover, once we determine that a person qualifies as an

ERISA fiduciary, we only consider the job activities that bring them within ERISA's definition of fiduciary when assessing whether they satisfied their ERISA duties because a person is an ERISA fiduciary "only as to the activities which bring [him or her] within the definition." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992). Therefore, in adjudicating Mrs. Weeks' claim, we must determine whether any of Yates' job activities brought her within ERISA's definition of fiduciary and, if so, whether Yates performed these activities in a manner that satisfied her duties as an ERISA fiduciary. We find that Yates' job activities did not make her an ERISA fiduciary.

As a human resources manager for Advance Stores, Yates was primarily responsible for recruiting new employees, informing them of company policies and their benefits, maintaining personnel files and answering employee questions or directing such questions to the proper person. In answering employee questions, however, Yates simply repeated information that was given to her by upper-management or that had already been inputted into the company's computer database. Thus, although Yates may have exercised some discretion in the overall performance of her job duties, Yates did not have any discretionary authority or control over the manner in which employee plans were managed and administered. Nonetheless, Mrs. Weeks argues that Yates became an ERISA fiduciary by answering her questions about Weeks' benefits rather than transferring her call to the benefits department. We have held, however, that "reading a computer screen to determine who is and who is not covered" does not make someone an ERISA fiduciary because such a function is administrative rather than discretionary. *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1009 (4th Cir. 1996). Such an act is merely administrative because in performing it an employee does not exercise any discretionary authority over the manner in which the ERISA plan is managed or administered.

Mrs. Weeks' argument that Yates qualifies as an ERISA fiduciary appears to rest on the things that she believes Yates should have done when confronted with her questions regarding Weeks' benefits. Mrs. Weeks argues that Yates "could have explained that [she] should be looking in the mail for the notification of rights under COBRA . . . [or] . . . told [her] that the company would be sending a letter with

instructions about how to convert life insurance benefits . . . [or] . . . directed her to another benefits department for information relating to a specific address or telephone number of Prudential in order to convert the life insurance." Brief for Appellant at 20-21. The fact that Yates could have, and probably should have, done some of these things does not, however, make her an ERISA fiduciary. In determining whether a person qualifies as an ERISA fiduciary, we do not look at what that person should have done. Rather, our inquiry solely focuses on whether that person actually exercised any discretionary authority over the management and administration of the plan in question. Only after determining that a person qualifies as an ERISA fiduciary, do we consider what that person should and should not have done. Here, Yates, as illustrated by her job duties listed above, simply did not exercise the requisite discretionary control over Weeks' medical and life insurance plans. Moreover, we note that Mrs. Weeks and Weeks could have corrected any misstatements made by Yates, an administrative employee, by going through the documentation, such as the employee handbook, that was provided to Weeks.

Accordingly, we find that the district court did not err by concluding that Mrs. Weeks and Weeks were not entitled to rely on Yates' statements as to the termination of Weeks' medical and life insurance coverage because Yates did not qualify as an ERISA fiduciary.

## IV.

We hold that the district court properly granted Defendants summary judgment on Mrs. Weeks' claim that she and Weeks were entitled to rely on Yates' statements regarding coverage under Weeks' medical and life insurance plans because Yates qualifies as an ERISA fiduciary. Because Mrs. Weeks failed to raise her ERISA § 1024(b)(1) argument below, we decline to reach this issue. Likewise, we decline to reach her argument that Advance Stores' customary practice of notifying terminated employees of their right to continue their life insurance coverage created an affirmative duty to provide Weeks with such notice.

*AFFIRMED*