Corrected Opinion
 

 VAN NORTWICK, J.
 

 Mary Hinely appeals a final summary judgment in her action against Florida Motorcycle Training, Inc. (“FMT”), seeking damages for injuries that she sustained in an accident in the motorcycle training school operated by FMT. The court granted summary judgment based upon FMT’s affirmative defense that the exculpatory provisions contained within the registration application for FMT’s motorcycle training school, which was completed and signed by Hinely, expressly waived and released FMT from any liability arising from the motorcycle training classes. Below and on appeal, Hinely has asserted that the exculpatory provisions are unenforceable because they are unclear and ambiguous and, alternatively, are void as against public policy. We affirm.
 

 Hinely registered for a basic motorcycle riding course offered by FMT. Prior to enrolling in the course, Hinely printed and signed a registration application for the course from FMT’s internet website. The application contained an exculpatory provision under the heading: “Waiver
 
 of
 
 Release of Liability — Please Read Carefully” (emphasis added). The first paragraph of this exculpatory provision states that the signer:
 

 fully understand^] and acknowledge^] that: (a) risks and dangers exist in my use of motorcycle equipment and my participation in the Motorcycle Rider-Education Class activities; (b) my participation in such activities and/or use of such equipment may result in injury or illness including, but not limited to bodily injury, disease, strains, fractures, partial and/or total paralysis, death or other ailments that could cause serious disability; (c) these risks and dangers may be caused by the negligence of the owners, employees, officers of agents of Florida Motorcycle Training.... I hereby assume all risks and dangers and all responsibilities for any losses and/or damages, whether caused in whole or in part by the negligence or other conduct of the owners, agents, officers, or employees of Florida Motorcycle Training, Inc. or by another other person.
 

 The second paragraph of the provision is a release and waiver of liability which states:
 

 
 *623
 
 I, on behalf of myself, my personal representatives and my heirs hereby voluntarily agree to release, waive, discharge, hold harmless, defend and indemnify Florida Motorcycle Training. Inc. and its owners, agents, officers, and employees from any and all claims, suits or causes of action for bodily injury, property damage, wrongful death, loss of services or otherwise which may arise out of my use of motorcycles and motorcycle equipment or my participation in the Motorcycle Rider Education Class activities. I specifically understand that I am releasing, discharging and waiving any claims or actions that I may have presently or in the future for the negligent acts or other conduct by Florida Motorcycle Training. Inc. and its owners, agents, officers or employees.
 

 Finally, the exculpatory provision includes the following paragraph in capitalized and bold typeface immediately above Hinely’s signature:
 

 I HAVE READ THE ABOVE WAIVER OR RELEASE AND BY SIGNING IT AGREE IT IS MY INTENTION TO EXEMPT AND RELIEVE FLORIDA MOTORCYCLE TRAINING, INC. FROM LIABILITY FOR PERSONAL LIABILITY, PROPERTY DAMAGE OR WRONGFUL DEATH CAUSED BY NEGLIGENCE OR ANY OTHER CAUSE OF ACTION.
 

 Subsequently, Hinely was involved in an accident while participating in the FMT motorcycle class. Hinely filed an action against FMT alleging several theories of negligence, including negligent operation of a motorcycle training school, negligent selection of a course location and negligent supervision.
 
 [1]
 
 As an affirmative defense, FMT asserted that, by signing the registration application with the exculpatory provision, Hinely expressly waived and released it from any liability. In her reply to FMT’s answer and affirmative defenses, Hinely asserted that the exculpatory provisions she signed are unenforceable because they are unclear and ambiguous and that the exculpatory provisions are void as against public policy.
 

 FMT filed a motion for summary judgment arguing that the exculpatory provision signed by Hinely shielded FMT from liability for the accident. Following a hearing, the court granted FMT’s motion for final summary judgment. Hinely’s motion for rehearing, arguing that the court failed to consider the public policy implications of the release, was denied. This appeal followed.
 

 A motion for summary judgment should be granted if the movant conclusively demonstrates that there are no genuine issues of material fact.
 
 See Cox v. CSX Intermodal, Inc.,
 
 732 So.2d 1092, 1095-96 (Fla. 1st DCA 1999). As we have stated, “[wjhere the determination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment.”
 
 Id.
 
 at 1096 (quoting
 
 Angell v. Don Jones Ins. Agency, Inc.,
 
 620 So.2d 1012, 1014 (Fla. 2d DCA 1993)). In such case, “an appellate court is not restricted in its ability to reassess the mean ing and effect of a written instrument to reach a conclusion contrary to that of the trial court.”
 
 Cox, id.
 
 (quoting
 
 Angell,
 
 620 So.2d at 1014). Because the issue before us is simply a matter of law, our standard
 
 *624
 
 of review is
 
 de novo. AMEC Civil, LLC. v. State Dept. of Transp.
 
 41 So.3d 285, 238 (Fla. 1st DCA 2010).
 

 Exculpatory clauses “are enforceable only where and to the extent that the intention to be relieved was made clear and unequivocal in the contract, and the wording must be so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away.”
 
 Southworth & McGill, P.A. v. S. Bell Tel. & Tel. Co.,
 
 580 So.2d 628, 634 (Fla. 1st DCA 1991). A provision in a contract is ambiguous when it is of uncertain meaning, and thus may be fairly understood in more ways than one.
 
 See Tatman v. Space Coast Kennel Club, Inc.,
 
 27 So.3d 108, 110 (Fla. 5th DCA 2009). As such, a contract must be construed in ac cordance with the plain meaning of its terms.
 
 See Hand v. Grow Constr. Inc.,
 
 983 So.2d 684, 686 (Fla. 1st DCA 2008).
 

 We disagree with Hinely’s contention that the exculpatory provision in question is unclear and ambiguous. Although Hinely asserts that the typographical error in the provision’s heading (“Waiver
 
 of
 
 Release of Liability”) may lead a person to understand the provision in more ways than one, it is obvious from a reading of the exculpatory provision as a whole that the provision was plainly intended to relieve FMT of liability for negligence associated with the motorcycle training classes. Moreover, the headings or subheadings of a document do not dictate the meaning of the entire agreement, especially where the literal language of the heading is contrary to the agreement’s overall scheme.
 
 See, e.g., Moore v. State Farm Mut. Auto. Ins. Co.,
 
 916 So.2d 871, 875 (Fla. 2d DCA 2005) (“[T]he intention of the parties must be determined from an examination of the entire contract and not from separate phrases or paragraphs.”);
 
 see also Imation Corp. v. Koninklijke Philips Electronics N.V.,
 
 586 F.3d 980, 987 n. 3 (Fed.Cir.2009) (“This court is unwilling to resolve a pivotal issue of contract interpretation based on the tense of section headings where doing so would conflict with the plain reading of operative language elsewhere in the contract.”). Hinely asserts that from the wording of the heading a person signing the document would conclude that the provision waives any release of liability by FMT. We do not agree. FMT’s intention to reduce its future liability, rather than facilitate such claims, is clearly shown by the fact that the typographical error only occurs in the title and the error is not repeated in the remainder of the document.
 
 See City Nat’l Bank v. Citibank, N.A.,
 
 373 So.2d 703, 707 (Fla. 3d DCA 1979) (enforcing an exculpatory clause after concluding that although there were ambiguities the entirety of the exculpatory clause was clear). The contract language in the present case clearly shows FMT’s intent to avoid liability through the exculpatory clause.
 

 Hinely also asserts that FMT’s exculpatory provision is void as against public policy. An exculpatory clause is void as against public policy when the following elements are established:
 

 (1) it concerns a business of a type generally suitable for public regulations; (2) the party seeking exculpation is engaged in performing a service of great public importance, which is often a matter of practical necessity for some members of the public; (3) the party holds himself out as willing to perform this service for any member of the public who seeks it; (4) as a result of the essential nature of the service and the economic setting of the transaction, the party seeking exculpation possesses a decisive advantage in bargaining strength; (5) in exercising superior bargaining power, the party confronts the public with a standardized
 
 *625
 
 adhesion contract of exculpation; and (6) as a result of the transaction, the person or property of the purchaser is placed under control of the party to be exculpated.
 

 Goeden v. CM III, Inc.,
 
 756 So.2d 1105, 1106 (Fla. 3d DCA 2000) (quoting
 
 Banfield v. Louis,
 
 589 So.2d 441, 446 (Fla. 4th DCA 1991)).
 

 Under these factors, based on the undisputed facts here, the exculpatory clause at issue is not contrary to public policy. We find
 
 Goeden
 
 persuasive. In
 
 Goeden,
 
 the Third District considered a case involving a city parking enforcement specialist who, after signing a contract containing an exculpatory provision, enrolled in a motorcycle driving course and suffered injuries. 756 So.2d at 1106. On appeal, Goeden argued that the release was void as against public policy since state law required enforcement specialists to possess a motorcycle operator’s license, if they chose to utilize a “three wheel[ed] vehicle” while performing their duties.
 
 Id.
 
 at 1105. Specialists could obtain the required license by enrolling in a motorcycle riding course, although the record reflected that specialists could have obtained a motorcycle operator’s license without enrolling in the class, since Florida law at the time only made the course mandatory for applicants who were under 21 years of age.
 
 Id.
 
 at 1106. Further, a specialist was not required to enroll in such a course if the specialist chose to perform his or her duties on foot or chose to transfer to another line of work.
 
 Id.
 
 at 1105. As the
 
 Goeden
 
 court explained:
 

 [flor members of the public who are twenty-one or older, attendance at the motorcycle school is an available option, but not a requirement, insofar as the driver’s license law is concerned. That being so, we are not persuaded that attendance at the school is a matter of practical necessity or an essential service ....
 

 Id.
 
 Accordingly, the
 
 Goeden
 
 court held that, since the officer was over 21 years of age at the time she enrolled in the motorcycle school, the course was not mandatory for her and that the release of liability was therefore valid.
 
 Id.
 
 at 1106-07.
 

 Hinely has failed to satisfy several factors necessary to establish that this exculpatory provision is void. First, there is no evidence that FMT engaged in performing a service of great public importance by offering motorcycle training courses. Second, as in
 
 Goeden,
 
 the course here was not an essential service or practical necessity for Hinely since the applicable Florida law at the time of the accident did not require an applicant to enroll in a motorcycle training class as a condition of obtaining a license.
 
 [2]
 
 Finally, Hinely also failed to demonstrate that FMT exercised superior bargaining power.
 
 See, e.g., Petersen v. Sorensen,
 
 118 Wash.App. 1027 (Wash.Ct. App.2003) (holding that, although motorcycle driving courses are favored as a mechanism for gaining proficiency, “this does not create an unfair bargaining advantage be
 
 *626
 
 cause there was no need for [the plaintiff] to take the course at all”).
 

 AFFIRMED.
 

 WOLF, and THOMAS, JJ., concur.
 

 [1]
 

 . Alachua County was also named as a defendant, but the County did not join FMT's motion for summary judgment and thus was not a party to the final order granting summary judgment and is not a party to this appeal.
 

 [2]
 

 . The
 
 Goeden
 
 court suggested that, had the state mandated attendance at the motorcycle training class as a prerequisite to obtaining a license, it would have held otherwise and ruled that the release violated public policy.
 
 See Goeden
 
 at 1106. Because that issue is not before us, we do not address it. We note that the applicable statute has been amended. Pursuant to section 43, chapter 2006-290, Laws of Florida, the words "who is under 21 years of age" were stricken from section 322.12(5)(a), Florida Statutes (2009), which outlines Florida motorcycle license examination requirements. Thus, it appears that, under the current law, all applicants for motorcycle driving licenses must complete a DMV-approved motorcycle training course before obtaining a license.