**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JEREMY A. MAYFIELD; MAYFIELD
MOTORSPORTS, INCORPORATED,

<em>Plaintiffs-Appellants,</em>

v.

NATIONAL ASSOCIATION FOR STOCK
CAR AUTO RACING, INCORPORATED;
BRIAN Z. FRANCE; AEGIS SCIENCES
CORPORATION; DAVID LEE BLACK;
DOUGLAS F. AUKERMAN,

<em>Defendants-Appellees,</em>

v.

MEGAN P. FRANCE; GRACE
MCLAURIN; AMY FRANCE,

<em>Movants.</em>

No. 10-2437

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Senior District Judge.
(3:09-cv-00220-GCM)

Argued: January 24, 2012

Decided: March 26, 2012

Before GREGORY and KEENAN, Circuit Judges, and
Liam O'GRADY, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Keenan and Judge O'Grady joined.

---

**COUNSEL**

**ARGUED:** Tillman Finley, MARINO LAW PLLC, Washington, D.C., for Appellants. David Boies, BOIES, SCHILLER & FLEXNER, LLP, Armonk, New York, for Appellees. **ON BRIEF:** Daniel Marino, Nancy Luque, LUQUE MARINO LLP, Washington, D.C., for Appellants. Helen M. Maher, Olav A. Haazen, BOIES, SCHILLER & FLEXNER, LLP, Armonk, New York; Gary K. Harris, BOIES, SCHILLER & FLEXNER, LLP, Orlando, Florida; Michael M. Merley, BOIES, SCHILLER & FLEXNER, LLP, New York, New York, for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

In this case, race car driver Jeremy Mayfield appeals the district court's dismissal of his complaint against the National Association for Stock Car Auto Racing ("NASCAR") for conduct arising out of a positive drug test. Finding that the district court properly dismissed the case and did not abuse its discretion in denying Mayfield's motions to reconsider and to amend, we affirm.

I.

Appellant Jeremy Mayfield is a professional race car driver and the principal owner of Mayfield Motorsports, Inc., which operates a race team based in North Carolina. Mayfield raced in events staged by NASCAR. Brian France is the principal owner and chief executive officer of NASCAR, Aegis Sci-

ences Corporation conducted the relevant drug tests, and David Black and Douglas Aukerman are professionals associated with Aegis.

Prior to the 2009 racing season, Mayfield signed three documents relevant to this appeal. First, he signed a contract between himself and NASCAR, the "NASCAR Sprint Cup Series 2009 Driver and Car Owner Agreement" ("Driver/Owner Agreement"). That document states in relevant part, "Driver and car owner understand and agree to abide by the NASCAR Substance Abuse Policy" ("The Policy"). Mayfield also signed the "2009 NASCAR Competition Membership and License Applications," ("License Applications") in which he acknowledged, "I am familiar with the current NASCAR Rule Book, and I agree to abide by such rules as they may be amended from time to time. This includes, but is not limited to, abiding by the NASCAR Substance Abuse Policy." Finally, Mayfield signed a Driver and Car Owner Application.

The Policy prohibits competitors "from using, possessing, purchasing, selling and/or participating in the distribution of illegal substances, regardless of the amount, at any time." It also requires each driver to submit to random drug testing. By a 2008 memorandum, NASCAR identified the drugs for which individuals would be tested. Methamphetamine was one of the drugs listed. The Policy further requires that all drug testing be performed at a facility certified by the Substance Abuse and Mental Health Services Administration ("SAMHSA") of the Department of Health and Human Services or by the College of American Pathologists Forensic Urine Drug Testing Program.

Several of the documents Mayfield signed purport to release NASCAR from any and all liability arising out of the Policy. First, the Driver and Car Owner Application contains the following passage:

Accordingly, I HEREBY RELEASE, DISCHARGE, COVENANT NOT TO SUE, AND AGREE TO HOLD HARMLESS NASCAR, its officers, employees, directors, agents, and such testing facilities and Medical Review Officers as NASCAR retains or selects in connection with implementation of this Policy, as well as the officers, employees, and agents of each of them, and any other persons or entities against whom I might have a claim, from and/or for claims, damages, losses, or expenses of any kind, whether caused by negligence or otherwise, arising out of the implementation of the Policy, or any act or omission in connection therewith, including and without limitation, the testing of specimens and the publication of the test results and circumstances giving rise to such test or tests to any third party or parties by NASCAR or said testing facilities or said Medical Review Officers, as well as the officers, employees, and agents of each of them, or any other person or entities.

The Policy similarly provides:

NASCAR may publish the results of any test or tests conducted pursuant to this Policy and the circumstances giving rise to such test to such third parties as NASCAR, in its sole discretion, deems reasonable under the circumstances. The Competitor or Official shall have no claim or cause of action of any kind against NASCAR or any director, officer, employee or agent of NASCAR with respect to such publication.

And finally, the Driver/Owner Agreement provides:

**18. INDEMNIFICATION.** Car owner agrees that it is solely responsible for, and will defend, indemnify and hold harmless NASCAR and its affiliates, and

the shareholders, directors, officers, agents, and employees of NASCAR and of its affiliates from any third-party loss, costs, expenses (including attorneys' fees), claims, demands, liabilities, causes of action or damages, arising out of or in any way related to this Agreement.

On May 1, 2009, Mayfield was selected for random drug testing. On May 7, he was informed that his "A Sample"[1] was positive for methamphetamine. In response, Mayfield said that he had ingested Claritin-D for allergies and Adderall XR for a claimed recent diagnosis of attention deficit hyperactivity disorder. On May 8, Mayfield was given the option of having his B Sample tested to confirm or refute the first test; that sample was also positive for methamphetamine. Following these positive tests, NASCAR suspended Mayfield indefinitely until he completed its "Road to Recovery" Program.

On May 15, 2009, Appellee Brian France held a press conference where he indicated that Mayfield had been suspended because he took a "performance enhancing" or "recreational" drug. Mayfield alleges that these statements "were intentional, malicious, reckless and false."

On May 29, 2009, Mayfield filed suit against Appellees, asserting claims for defamation, violation of the North Carolina Persons with Disabilities Protection Act, unfair and deceptive trade practices, breach of contract, and negligence. Appellees removed the case to federal court, and NASCAR asserted counterclaims against Mayfield for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud in the inducement, and fraud. Appellees filed a motion for judgment on the pleadings that the district court granted in which they argued that the contractual provisions quoted above released Appellees from

---

[1]When a driver is tested for drugs, he must provide two samples, labeled "A" and "B."

liability and that Appellants had failed to sufficiently plead their claims.

While the case proceeded to discovery on NASCAR's counterclaims, Appellants informed Appellees that they intended to amend their complaint to add new allegations and to assert additional claims. NASCAR then moved to voluntarily dismiss its counterclaims; the district court granted NASCAR's motion and dismissed its counterclaims without prejudice. Appellants filed a motion to reconsider and to amend their complaint, and the court denied that motion. This appeal followed.

II.

Appellants contend that the district court erroneously granted judgment on the pleadings and improperly denied their motion to reconsider and amend the complaint. We affirm the district court on both counts.

## A.   *Judgment on the Pleadings*

Appellants first challenge the district court's dismissal on the pleadings. A decision to grant judgment on the pleadings is reviewed de novo, applying the same standard as a 12(b)(6) motion to dismiss. *Burbach Broad Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The court granted Appellees' motion on two independent grounds, and each is evaluated below.

### 1.   *The Liability Waiver*

The district court first found that Appellants waived all of their claims when Mayfield signed the Driver/Owner Agreement and the Driver and Car Owner Application. The parties agree that Florida law governs this action. Further, Appellants admit that their negligence claim is barred by the waiver. Thus the only issues are whether Appellants also waived the

defamation, breach of contract, and unfair and deceptive trade practices claims.

Under Florida law, "a party is bound by, and a court is powerless to rewrite, the clear and unambiguous terms of a voluntary contract." *Med. Ctr. Health Plan v. Brick*, 572 So.2d 548, 551 (Fla. Dist. Ct. App. 1990). While waivers are generally disfavored and will be construed strictly, *Cain v. Banka*, 932 So.2d 575, 580 (Fla. Dist. Ct. App. 2006), exculpatory clauses are enforceable where "the intention to be relieved was made clear and unequivocal in the contract, and the wording [is] so clear and understandable that an ordinary and knowledgeable party will know what he is contracting away," *Hinely v. Fla. Motorcycle Training, Inc.*, 70 So.3d 620, 624 (Fla. Dist. Ct. App. 2011) (citations omitted). "[A]s a general proposition, unambiguous exculpatory provisions are enforceable unless they contravene public policy." *Loewe v. Seagate Homes, Inc.*, 987 So.2d 758, 760 (Fla. Dist. Ct. App. 2008).

### a. Defamation

Because we affirm the district court's dismissal of Appellants' defamation claim on other grounds, *see infra* Section II.A, we do not address the question of whether Florida law will enforce the waiver with respect to that count of the complaint.

### b. Breach of Contract

With respect to their contract claim, Appellants contend that the liability waiver should not be enforced because Florida law does not recognize a limitation-of-liability provision that precludes *any and all* recovery for a breach of contract. The Florida courts have held that exculpatory clauses which negate one party's contractual obligations fail for lack of mutuality. In *Ivey Plants, Inc. v. FMC Corp.*, the District

Court of Appeal of Florida held that such a release could not be enforced:

> If plaintiffs can prove *a breach of this contractual obligation*, the provisions of paragraph 16 [the exculpatory provisions] should not act as a bar to the maintenance of a breach of contract action. If such was the case then the contract would be lacking in mutuality of obligation and mutuality of remedy, rendering it unenforceable.

282 So.2d 205, 208 (Fla. Dist. Ct. App. 1973); *see also Golden v. Mobil Oil Corp.*, 882 F.2d 490, 494 (11th Cir. 1989). However, this is not to say that Florida will refuse to enforce *any* liability waiver for breach of contract claims. In *Greater Orlando Aviation v. Bulldog Airlines, Inc.*, the appellate court enforced a liability waiver against a complaint that included, inter alia, a breach of contract count. 705 So.2d 120, 121 (Fla. Dist. Ct. App. 1998). The *Greater Orlando* court could not have reached this holding without implicitly finding that a liability waiver is enforceable against at least some breach of contract claims. In *Sniffen v. Century Nat'l Bank of Broward*, the appellate court again threw out an exculpatory provision, but did so because enforcement would render the "agreement between the parties *entirely nugatory*." 375 So.2d 892, 894 (Fla. Dist. Ct. App. 1979) (emphasis added). It went on to say that the provision the liability waiver supposedly covered "is the very heart of the relationship and the only real reason" anyone would ever have entered into the contract in the first place. *Id.* "[I]t is obvious that [the plaintiff] will have received nothing whatever in return for his rental fee." *Id.* Taking these cases together, we conclude that Florida law permits waiver of run-of-the-mill breach-of-contract actions, but will not enforce a waiver where the claim renders the contract itself "entirely nugatory."

In this case, the liability waiver is enforceable under Florida law. Appellants argue that if the waiver provision purports

to apply to "any and all" claims of liability, "the contracts between [Appellants] and NASCAR are nullities" and fall under the *Ivey Plants* rule. However, Appellants misread Florida law. In *Greater Orlando*, the liability waiver contained a similar phrase, making the defendant "free from any and all liability." 705 So.2d at 121. But there the appellate court enforced the waiver. *Id.* at 122. Thus the question must be whether a refusal to enforce the *particular claim* made by the Appellants would abolish any lack of mutuality. And here, the complaint does not fall under the *Ivey Plants* rule. Appellants allege in their complaint only that "NASCAR and AEGIS have breached their contracts with each other, and NASCAR has breached its contracts with Mayfield and MMI." On its own, the complaint does not allege a breach that would render the entire contract nugatory. Moreover, it is apparent from the briefs that the crux of the complaint does not allege a breach of such a basic provision. Appellants' contention is that NASCAR was obligated to perform the drug tests in a particular way, using particular laboratories with particular government-certified standards, and that NASCAR failed to do so. Whether these allegations turn out to be true, they do not go to the heart of the contract—granting a license to Appellants to race in NASCAR events in exchange for abiding by a number of other terms including, for example, that Mayfield abide by the NASCAR rule book, that Mayfield give NASCAR permission to use his name and likeness for advertising purposes, that Mayfield appropriately distribute any prize money, and that Mayfield not transfer his NASCAR license to anyone. The drug policy, in other words, constituted only one term of a multifaceted contract. We therefore affirm the district court's dismissal of the breach of contract claim.

### c.   *Unfair and Deceptive Trade Practices*

As discussed above, Florida law permits a party to waive its rights as to at least some types of claims. The district court found that the liability waiver applies to Appellants' unfair and deceptive trade practices counts. Rule 28(a) of the Federal

Rules of Appellate Procedure notes that the Appellant's brief "must contain appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." FED. R. APP. P. 28(a)(8). Appellants make no argument whatsoever that the unfair and deceptive trade practices count of their complaint is not covered by the waivers Mayfield signed.**[2]** "A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (citations omitted). We therefore affirm the district court's dismissal of that claim.

### 2.  *Failure to State a Claim*

While the district court found that the liability waiver warranted dismissal of all of Appellants' claims, it went on to find that the Appellants did not state a claim upon which relief may be granted. Because we affirm the district court's dismissal of the breach of contract and unfair and deceptive trade practices counts on other grounds, *see supra* II.A.1.b & c, here we only address the defamation claim.

To warrant the denial of a 12(b)(6) motion, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* Relief, in other

---

**[2]**Appellants' first brief does not even use the term "unfair and deceptive trade practices" in the section discussing the liability waiver. Indeed, the only time they raise the issue is in their reply brief, where a section heading is entitled "The Anticipatory Releases Are Not Enforceable as Against Plaintiffs' Claim for Defamation, Unfair Trade Practices, and Breach of Contract . . . ." And even in that section Appellants argue only that the liability waiver is not enforceable against *intentional tort* and *contract* claims. We further note that neither party ever directly addressed whether an unfair and deceptive trade practices claim is covered by the liability waiver.

words, must be "plausible." *Id.* at 556. Appellants do not dispute the district court's finding that Mayfield is a public figure. Under *N.Y. Times Co. v. Sullivan*, a public figure must allege that the defamatory statement was made with "actual malice"; that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254, 279-80 (1964). "Reckless disregard" requires that the speaker "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

The Appellants argue that allegations of malice need only be articulated in the most general terms. Rule 9(b) does say that while allegations of fraud must be stated with particularity, malice "may be alleged generally." FED. R. CIV. P. 9(b). But in *Aschcroft v. Iqbal*, the Supreme Court held,

> It is true that Rule 9(b) requires particularity when pleading "fraud or mistake," while allowing "[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally." But "generally" is a relative term . . . Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8.

129 S. Ct. 1937, 1954 (2009). As we noted in the very case cited by the Appellants, "the usual standards of notice pleading apply in defamation cases." *Hatfill v. N.Y. Times Co.*, 416 F.3d 320, 329 (4th Cir. 2005). Rule 9(b) ensures there is no *heightened* pleading standard for malice, but malice must still be alleged in accordance with Rule 8—a "plausible" claim for relief must be articulated.

Applying the *Iqbal* standard to this case, we find that the Appellants have not stated a claim. To begin with, Appellants' assertion that Appellees' statements "were known by

[them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity" is entirely insufficient. This kind of conclusory allegation—a mere recitation of the legal standard—is precisely the sort of allegations that *Twombly* and *Iqbal* rejected. The Appellants go on to point to their allegations that the Appellees intended to harm Mayfield by publishing his drug test results and that Aegis failed to follow SAMHSA testing procedures. But these allegations simply do not suggest that Appellees knew their statements were false or that they were reckless with respect to their veracity. The Appellants continue by highlighting their allegation that Appellees were informed by Mayfield that he took both Claritin and Adderall, which was legally prescribed. But Appellants admit in their recitation of the facts that before Appellees announced Mayfield's suspension, they contacted Mayfield to follow up on the issue, asking him what drugs he had taken as part of their investigation. Perhaps most importantly, we must not forget the context in which the allegedly slanderous statements are made: Mayfield was *randomly* selected to undergo drug testing pursuant to a valid NASCAR policy and *two separate* tests yielded a positive result for methamphetamine, a drug that drivers are prohibited from taking. The statements France made at the press conference did no more than report what the positive drug tests indicated—that Mayfield took a recreational or performance-enhancing drug. We therefore affirm the district court's dismissal of the complaint.

## B. *The Post-Judgment Motions*

Appellants further argue that the district court erroneously denied their motions to reconsider and to amend their complaint after it entered final judgment. A district court's decision to deny a motion to alter or amend a complaint under Rule 59(e) and its determination of whether to permit the filing of an amended complaint are both reviewed for abuse of discretion. *Matrix Capital Mgm't Fund, LP v. Bearing-Point, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009).

### 1. The Motion to Reconsider

Appellants brought their motion to reconsider pursuant to "Rule 59 and/or 60" of the Federal Rules of Civil Procedure. A Rule 59(e) motion may only be granted in three situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (citations omitted). It is an extraordinary remedy that should be applied sparingly. *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997). Like a 59(e) motion, Rule 60 provides for an extraordinary remedy that should not be awarded except under exceptional circumstances. *Ackermann v. United States*, 340 U.S. 193, 202 (1950). Dispositive in this case, however, is *Matrix Capital*'s dictate that

> [T]he district court may not grant [a Rule 15(a)] motion unless the judgment is vacated pursuant to Rule 59(e) or Rule 60(b). A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion.

*Matrix Capital*, 576 F.3d at 193. In other words, Rule 15(a) and Rule 59(e) motions rise and fall together. Thus, to evaluate whether the motion to reconsider should have been granted, we must determine whether the denial of the motion for leave to amend was proper.

### 2. The Motion to Amend

Rule 15(a)(2) provides that "a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "This directive gives effect to the federal policy in favor of resolving cases on the

merits instead of disposing of them on technicalities." *Matrix Capital*, 576 F.3d at 193. This means that a request to amend should only be denied if one of three facts is present: "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Id.*

The district court's denial of the 15(a) motion was contrary to Circuit precedent. In its order, the court noted the *Matrix Capital* ruling that it may not grant a post-judgment motion unless the judgment is vacated pursuant to a motion to reconsider; and because it had denied the motion to reconsider,[3] it summarily denied the motion to amend. But the court failed to take note of the rule in *Matrix Capital*, which holds that an improper denial of a 15(a) motion is sufficient grounds for reversing the denial of a motion to reconsider. *See Matrix Capital*, 576 F.3d at 193. The court's reasoning, therefore, was contrary to controlling authority.

Nevertheless, we affirm the district court's denial of the motion. With respect to the breach of contract and unfair and deceptive trade practices claims, the liability waivers preclude recovery. *See supra* II.A.1. Any amendments to those counts, therefore, would be futile. As for the new defamation allegations and the new additional tort claims, we find that permitting Appellants to amend their complaint would be prejudicial to the Appellees. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). And while delay alone "is an insufficient reason to deny a motion to amend," "the further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . ." *Matrix Capital*, 576

---

[3]The district court denied that motion on grounds that there was no new evidence that could not have been discovered previously and no change in controlling law. It did not, however, address prejudice, bad faith, or futility.

F.3d at 193. Here, the conduct giving rise to this lawsuit occurred nearly three years ago, in May 2009. The complaint itself was filed over two and a half years ago, giving the Appellants ample time to make any amendments before the district court granted judgment on the pleadings. The amount of discovery is also a relevant consideration in determining whether prejudice would result from the granting of a 15(a) motion. *See Equal Rights Center v. Niles Bolston Assoc's*, 602 F.3d 597, 603 (4th Cir. 2010). Here, a significant amount of discovery had already been conducted: Appellants themselves, in their opposition to a motion by the Appellees, asserted that the "parties have engaged in significant and lengthy discovery." The district court also found—and this finding was not challenged by Appellants—that there was no new evidence that could not have been discovered previously. Thus, Appellants have no excuse for failing to include these additional allegations and causes of action in their original complaint.

Additionally, as the district court noted, the new allegations and causes of action asserted by the Appellants arise out of "an entirely new event and nucleus of facts." The additional allegations meant to bolster the defamation claim revolve around an alleged interaction that occurred in January of 2006, more than three years prior to the drug test that spawned this litigation. The new intentional tort claims are based on alleged interference with an entirely separate sponsorship agreement—conduct that is, by Appellants' own admission, "unrelated to the Substance Abuse Policy."

In its order granting dismissal the district court wrote that the litigation in this case had been "extremely contentious." Our review of the record confirms this observation. And while the court "decline[d] to impose sanctions at this time," it warned that "if Plaintiffs continue to file unsubstantiated pleadings that are prejudicial to the Defendants, the decision not to impose sanctions will be revisited." "We find compelling" the argument "that the amendment—coming so

belatedly—would change the nature of the litigation and, would therefore, prejudice" the Appellees. *Equal Rights Center*, 602 F.3d at 604. We therefore find the district court did not abuse its discretion in denying the motion to amend.

## III.

For the reasons given above, we affirm the district court's dismissal of the complaint and its denial of Appellants' post-judgment motions.

*AFFIRMED*