**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 19-1236**

---

FIDELIS AGBAPURUONWU,

Plaintiff – Appellant,

v.

NBC SUBSIDIARY (WRC-TV), LLC, d/b/a NBC4 Washington;
NBCUNIVERSAL MEDIA, LLC,

Defendants – Appellees.

---

**No. 19-1272**

---

FIDELIS AGBAPURUONWU,

Plaintiff – Appellee,

v.

NBC SUBSIDIARY (WRC-TV), LLC, d/b/a NBC4 Washington;
NBCUNIVERSAL MEDIA, LLC,

Defendants – Appellants.

---

Appeals from the United States District Court for the Eastern District of Virginia, at
Alexandria. Anthony John Trenga, District Judge. (1:18-cv-01555-AJT-MSN)

---

Submitted: June 1, 2020                    Decided: August 18, 2020

---

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Joshua Erlich, Katherine L. Herrmann, THE ERLICH LAW OFFICE, PLLC, Arlington, Virginia, for Appellant/Cross-Appellee. Jay Ward Brown, BALLARD SPAHR LLP, Washington, D.C., for Appellees/Cross-Appellants.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Fidelis Agbapuruonwu filed this defamation action against NBCUniversal Media, LLC, and its subsidiary, NBC4 Washington (collectively, "NBC"). Agbapuruonwu alleges that NBC4 published a television news segment and internet news article (together, the "Report") that falsely suggested his involvement in a welfare fraud scheme perpetrated by his wife, Helen.[1] The district court determined that Agbapuruonwu did not state a claim for defamation per se because Virginia's fair report privilege protected the purportedly false statements in the Report and Agbapuruonwu did not allege an actionable defamatory implication. Additionally, the court determined that Agbapuruonwu failed to show that the immunity provision of Virginia Code section 8.01-223.2 did not apply to the Report. The court dismissed the Complaint for failure to state a claim and denied NBC's request for attorney fees. These cross-appeals followed. As explained below, we affirm.

I.

A.

We accept the facts alleged in the Complaint as true and recite them in the light most favorable to Agbapuruonwu. *See Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 271–72 (4th Cir. 2019).

Agbapuruonwu immigrated to the United States from Nigeria. Thereafter, he received the prestigious Paul and Daisy Soros Fellowship for New Americans to study law

---

[1] We refer to Fidelis Agbapuruonwu as "Agbapuruonwu" and Helen Agbapuruonwu as "Helen."

3

at The Ohio State University Moritz College of Law.  From 2006 to 2011, he worked as an associate in Mayer Brown's Washington, D.C., office.  In 2011, Agbapuruonwu left Mayer Brown to start his own business.  But while Agbapuruonwu was succeeding professionally, his wife, Helen, was fraudulently collecting welfare benefits.  On March 7, 2017, Helen was arrested and charged with four counts of welfare fraud in contravention of Virginia law.  As a result of her fraud, Helen allegedly collected more than $100,000 in benefits.  Agbapuruonwu cooperated fully with Arlington County's investigation of Helen and was neither suspected of wrongdoing nor charged in relation to Helen's crime.

Three days after Helen's arrest, NBC4 published the Report.[2]  The Report's television news segment lasts about two minutes and combines interviews and narration to describe the circumstances of the Arlington County investigation of Helen and her subsequent arrest for welfare fraud.  NBC4's news anchors introduce the segment on "one of the biggest welfare fraud investigations ever in Arlington County," describing the investigation's "focus" as "a mother of four, whose husband was a D.C. attorney making more than a million dollars last year."  *See* Julie Carey, *Virginia Woman Charged with Welfare Fraud for Collecting Benefits While Husband Earned Millions*, NBC4 Wash. (Mar. 10, 2017) at 0:00–0:18, https://www.nbcwashington.com/news/local/virginia-woman-charged-with-welfare-fraud-for-collecting-benefits-while-husband-earned-millions/39316/.

---

[2] We consider the Report's television news segment because it was attached to the Complaint and the parties do not question its authenticity.  *See Dawson-Murdock*, 931 F.3d at 272 n.2.  We also consider the Report's internet news article because the Complaint explicitly relied on in it and it is integral to the claims therein.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

4

The television segment displays Helen's mug shot, and the field reporter, Julie Carey, explains that Helen is accused of falsifying welfare applications and "pocketing more than $100,000 in welfare benefits." *Id.* at 0:25–0:37.

Carey is then shown knocking on the door of the "Arlington County townhome where [Helen] lives with her four children," but "no one answered the door." *Id.* at 0:38–0:43. The segment cuts to clips of the Arlington County Department of Human Services and an Arlington County Police cruiser while Carey explains that "the welfare fraud investigation into [Helen's] benefits began months ago," when the Arlington County Department of Human Services and the Arlington County Police reviewed six years of Helen's records. *Id.* at 0:44–0:52. Next, Carey interviews an Arlington County Police representative, who says that "[i]t's a lot of money and it's money that is intended for those that are truly in need, who are low-income and really need the government's assistance." *Id.* at 0:53–0:59.

After the interview, Carey relates that NBC4 obtained "court documents . . . that reveal while Helen was collecting welfare benefits, her husband was working as an attorney in D.C." *Id.* at 1:00–1:07. As Carey narrates, Helen's mug shot is replaced onscreen by Agbapuruonwu's headshot. A screen capture of Agbapuruonwu's LinkedIn profile replaces the headshot, and Carey explains that the profile "shows he's with Mayer Brown, but when I called the firm today, they say Fidelis Agbapuruonwu is no longer there." *Id.* at 1:08–1:15. Carey then remarks that Agbapuruonwu "won a prestigious fellowship that helped pay his way through law school." *Id.* at 1:16–1:22.

5

Turning back to the "court documents," Carey explains that "courtroom notes" specify that Agbapuruonwu's business "made $1.5 million last year" and that he "is believed to have fled the country and is somewhere in Africa." *Id.* at 1:23–1:34. Excerpts from these "courtroom notes" — a form memorandum completed by the Arlington County magistrate who presided over Helen's arraignment and registered her request for a court-appointed attorney (the "Magistrate's Notes") —are displayed onscreen as Carey narrates.[3]

Wrapping the segment up, Carey relates that Helen's lawyer declined to comment and that the director of the preschool that Helen's children attended was "shocked" by the charges and believed that they were "not true" because the Agbapuruonwus were a "loving and lovely family." *Id.* 1:35–1:52. The segment concludes with Carey explaining that the Arlington County Police hope that the charges will deter others from "cheating the system." *Id.* at 1:53–2:03.

The Report's internet news article sets forth substantially the same information, but it does not include the images of Agbapuruonwu, Helen, or the Magistrate's Notes. *See* Carey, *supra*.

---

[3] In their entirety, the Magistrate's Notes consist of a form "Memo" for the "General District Court." That memo sets forth a series of checkboxes to indicate that "[t]he accused named on the attached warrant(s) or capias has been advised of his / her right to request a court appointed attorney" and (1) "[r]equests a court appointed attorney," (2) "[d]oes not want an attorney," (3) "[w]ants an attorney and will employ his / her own," or (4) "[o]ther." *Id.* With respect to Helen, the magistrate checked the boxes for "[r]equests a court appointed attorney" and "[o]ther." *Id.* In the comment space adjacent to the "[o]ther" box, the magistrate noted: "[T]otal alleged [f]raud is 100K + over 5 years. Husband[']s business grossed over [$]1.5 million last year. Husband is believed to have fled country and is somewhere in Africa. He is also a D.C. lawyer."

6

B.

After Agbapuruonwu filed the Complaint against NBC in Virginia state court, NBC removed the case to the Eastern District of Virginia. In the Complaint, Agbapuruonwu alleges a common law claim for defamation per se.[4]

As relevant here, the Complaint alleges that the Report contains "false factual information concerning" Agbapuruonwu, including that he earned "more than a million dollars last year" and that "[c]ourt officials write, quote, husband is believed to have fled the country and is somewhere in Africa." The Complaint further alleges that the Report omits "the fact that [Agbapuruonwu] was not suspected by the Arlington County Police of having participated in the crimes alleged against [Helen] or any related criminal activity" and "the fact that [Agbapuruonwu] has not worked at [Mayer Brown] since 2011." The Complaint faults NBC4 for displaying images of Agbapuruonwu and his LinkedIn profile immediately after Helen's mug shot. The Complaint also faults NBC4 for displaying a cropped version of the Magistrate's Notes and alleges that the Report's failure to show the entire memorandum and its omission of the fact that the memorandum concerned Helen's request for a court-appointed attorney "robs the document of its context and creates false and defamatory implications." Predicated on those allegedly false factual statements and omissions, the Complaint alleges that the Report's "clear implication" is that (1) Agbapuruonwu "was guilty of criminal conduct and had fled the country to avoid

---

[4] The Complaint also alleges a claim for insulting words under Virginia Code section 8.01-45. Agbapuruonwu does not challenge the dismissal of that claim in his appeal.

7

prosecution, leaving behind his wife and children" and (2) Agbapuruonwu "was terminated or resigned [from his position at Mayer Brown] due to the criminal charges pending against [Helen]."

Pursuant to Federal Rule of Civil Procedure 12(b)(6), NBC moved to dismiss the Complaint for failure to state a claim. And, as part of its motion, NBC requested attorney fees under Virginia Code section 8.01-223.2. Immediately following a hearing on NBC's motion, the district court, ruling from the bench, granted the motion in part and dismissed the Complaint.

First, the district court determined that Virginia's fair report privilege applies to the Report's coverage of the allegedly false statements in the Magistrate's Notes. The court explained that the fair report privilege "immunizes publishers from liability for articles that accurately describe or summarize the contents of an official statement or report" and applies "even if it turns out that the underlying report is incorrect or it contains falsehoods."

Second, the court determined that the Report could not reasonably be understood to imply that Agbapuruonwu was involved in, or that his departure from Mayer Brown was related to, Helen's crime. The court pointed out that discussion of Agbapuruonwu's income in the Report was relevant to whether Helen committed welfare fraud, and the discussion of his employment status simply related information that Agbapuruonwu maintained on his LinkedIn profile and Mayer Brown's statement that he no longer worked there. Moreover, the court noted that the Complaint did not allege facts suggesting that NBC intended or endorsed either implication.

8

Accordingly, the court concluded that Agbapuruonwu failed to state a claim for defamation per se based on the Report's coverage of the Magistrate's Notes or based on a defamatory implication. Additionally, the court ruled that "for similar reasons" Agbapuruonwu failed to demonstrate that the Report was not protected by the immunity provision of Virginia Code section 8.01-223.2.[5] The court denied NBC's request for attorney fees without elaboration.

Agbapuruonwu timely appealed from the district court's dismissal of his defamation per se claim, and NBC timely cross-appealed from the court's denial of its request for attorney fees under Virginia Code section 8.01-223.2. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We begin with Agbapuruonwu's appeal from the dismissal of his defamation per se claim. This Court reviews the dismissal of a complaint under Federal Rule of Civil

---

[5] In relevant part, that statute provides:

A. A person shall be immune from civil liability for . . . a claim of defamation based solely on statements . . . regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party . . . . The immunity provided by this section shall not apply to any statements made with actual or constructive knowledge that they are false or with reckless disregard for whether they are false.

B. Any person who has a suit against him dismissed . . . pursuant to the immunity provided by this section may be awarded reasonable attorney fees and costs.

Va. Code § 8.01-223.2.

9

Procedure 12(b)(6) de novo. *See Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 274 (4th Cir. 2019). In undertaking that review, we accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 274–75. Only if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" can a court dismiss pursuant to Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

On appeal, Agbapuruonwu challenges the district court's application of Virginia's fair report privilege to the Report's statement that, according to the Magistrate's Notes, Agbapuruonwu "is believed to have fled the country and is somewhere in Africa." Agbapuruonwu also contests the court's conclusion that the Report does not reasonably imply that he was involved in Helen's crime. Under Virginia law, whether the fair report privilege applies and whether a statement is reasonably capable of conveying a defamatory implication are matters of law to be decided on a motion to dismiss. *See Webb v. Virginian-Pilot Media Cos., LLC*, 752 S.E.2d 808, 811 (Va. 2014); *Alexandria Gazette Corp. v. West*, 93 S.E.2d 274, 279 (Va. 1956).[6]

---

[6] Agbapuruonwu has waived any challenge to the Report's statements about his income or departure from Mayer Brown by failing to develop his appellate argument insofar as it pertains to those statements. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) (recognizing that "[a] party waives an argument by failing to present it in its opening brief or by failing to develop its argument").

A.

Agbapuruonwu contends that Virginia's fair report privilege does not apply to the Report because the Report (1) was not a substantially correct account of the Magistrate's Notes and (2) was made with actual malice, obviating the privilege altogether.

Virginia's fair report privilege protects the publication of "accounts of public proceedings or reports" — for example, records of judicial proceedings — "despite their defamatory nature." *See Lee v. Dong-A Ilbo*, 849 F.2d 876, 878 (4th Cir. 1988) (citing, *inter alia*, *Alexandria Gazette Corp.*, 93 S.E.2d at 279); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 254 (4th Cir. 1988) (applying fair report privilege to "republications of reports of judicial proceedings"). The fair report privilege applies "so long as the report [is] accurate and either complete or fairly abridged." *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993) (citing Restatement (Second) of Torts § 611 (Am. Law Inst. 1977)). Especially pertinent here, selective quotation from a report of an official proceeding constitutes a fair abridgement when it is a "substantially correct" account. *See Rushford*, 846 F.2d at 254. Indeed, the fair report privilege applies even if the statement quoted from the record is false. *See Alexandria Gazette Corp.*, 93 S.E.2d at 279.

As he must, Agbapuruonwu concedes that the Report quotes directly from the Magistrate's Notes. Nevertheless, Agbapuruonwu maintains that the Report is not a fair and substantially correct account of the Magistrate's Notes because it presented the statement concerning Agbapuruonwu's whereabouts without context and misattributed that statement "to court officials and police." Opening Br. at 17–20. We disagree as to both points.

11

The quotation in the Report of the statement from the Magistrate's Notes is accurate. The Report's attribution of the statement to "court officials" — that is, the magistrate (a Virginia judicial officer) — is substantially correct. *See* Va. Code §§ 19.2-33, 19.2-45. The Report's characterization of the Magistrate's Notes documenting Helen's arraignment as "courtroom notes" or "court documents" is also substantially correct. And Agbapuruonwu's contention that the Report falsely attributed the statement to the Arlington County Police is entirely without merit. The Report's presentation of the Magistrate's Notes does not even mention — let alone attribute the statement to — the police. At bottom, the message conveyed by the Report's selective coverage of the Magistrate's Notes is no different than that conveyed by the Magistrate's Notes themselves. Therefore, the Report, which is an accurate account and fair abridgement of the Magistrate's Notes, fits within Virginia's fair report privilege. *See Rushford*, 846 F.2d at 255; *see also* Restatement (Second) of Torts § 611 & cmt. f (Am. Law Inst. 1977).

Agbapuruonwu contends that even if the fair report privilege applies, NBC obviated the privilege by publishing the Report with actual malice. A statement is made with "actual malice" if it is made "with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). "Reckless disregard" occurs when a publisher entertains "serious doubts as to the truth of [the] publication." *St. Amant v. Thompson*, 390 U.S. 727, 730–31 (1968).

Whether a showing of actual malice can vitiate the fair report privilege seems to be an unsettled question under Virginia law. *See Bateman Litwin N.V. v. Swain*, No. 4:07cv138, 2009 WL 10688302, at *7 (E.D. Va. Mar. 18, 2009) (collecting cases).

12

Here, however, we need not delve any further into the effect of actual malice on Virginia's fair report privilege because the Complaint makes no plausible allegation of actual malice. A plausible allegation of actual malice requires "factual allegations" that "raise a right to relief above the speculative level." *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (internal quotation marks and alterations omitted). A conclusory allegation of knowledge of falsity or reckless disregard thereof — that is, "a mere recitation of the legal standard" — does not constitute a plausible allegation of actual malice. *Id.* at 378. Thus, the assertion in the Complaint that the Report contained statements made "with the knowledge they were false and . . . so recklessly as to amount to a willful disregard for the truth" is "entirely insufficient." *Id.*

Agbapuruonwu insists that actual malice is evidenced by NBC4's inclusion of the magistrate's notation that Agbapuruonwu "is believed to have fled the country and is somewhere in Africa" in order to sensationalize the Report. But the Complaint's allegation that Agbapuruonwu was, in fact, present in the United States does not demonstrate that NBC4 knew that the statement in the Magistrate's Notes was false or that NBC4 entertained doubts about its veracity. Indeed, the Magistrate's Notes, which document information reported during Helen's arraignment, reasonably bear indicia of truthfulness. *See Horne v. WTVR, LLC*, 893 F.3d 201, 211 (4th Cir. 2018) ("The failure to investigate, where there was no reason to doubt the accuracy of the sources used[,] cannot amount to reckless conduct." (internal quotation marks and alterations omitted)).

Furthermore, the allegations in the Complaint that the statement was false and that Agbapuruonwu was not charged with a crime do not suggest that NBC4 possessed

13

information inconsistent with the statement and yet included it in the Report. *Cf. Tomblin v. WCHS-TV8*, 434 F. App'x 205, 210 (4th Cir. 2011). Nor do those allegations suggest that NBC4 intended to make Agbapuruonwu the focus of the Report. Rather, the Report's collateral coverage of Agbapuruonwu highlights the seriousness of Helen's crime. And, crucially, the Report simply relayed the statement contained in the Magistrate's Notes. *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714 (4th Cir. 1991). Without a plausible allegation of actual malice, Agbapuruonwu's contention that actual malice obviates Virginia's fair report privilege stumbles before it starts. We are thus satisfied that the fair report privilege applies to the Report. Accordingly, we conclude that Agbapuruonwu fails to allege a plausible defamation per se claim based on the statement from the Magistrate's Notes.

## B.

Next, Agbapuruonwu contends that the Report implied he was involved in Helen's crime. According to Agbapuruonwu, that defamatory implication arises from the Report's (1) failure to "state that there were no criminal charges against" him, (2) misattribution of the statements from the Magistrate's Notes, and (3) inclusion of admittedly true information about his background. *See* Opening Br. at 25–26. We agree with the district court's conclusion that no defamatory implication can reasonably be gleaned from the Report.

Virginia law specifies that, when viewed in context, a defamatory implication "must be reasonably drawn from the words actually used." *See Webb*, 752 S.E.2d at 811. Moreover, the First Amendment "greatly restrict[s] the common law where" — as here —

14

"the defendant is a member of the press . . . [and] the subject matter of the supposed libel touches on a matter of public concern." *Chapin*, 993 F.2d at 1091–92 (applying Virginia law); *cf. Pendleton v. Newsome*, 772 S.E.2d 759, 764 (Va. 2015) (distinguishing *Chapin* from defamation case not involving public figures, issues of public concern, or press). Accordingly, "a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true." *Chapin*, 993 F.2d at 1092–93. Specifically, "[t]he language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference." *Id.* at 1093. Important here, the fair report privilege proscribes liability for "any actionable implication that may be contained" in a protected statement. *Id.* at 1098.

As we have explained, Virginia's fair report privilege applies to the Report's statement that court officials believe Agbapuruonwu "fled the country and is somewhere in Africa." And Agbapuruonwu has waived argument regarding the application of the fair report privilege to the remaining statements in the notes. We are therefore mindful that Agbapuruonwu's defamation per se claim cannot rest on any purportedly defamatory implication conveyed by the statements in the Magistrate's Notes. *See Chapin*, 993 F.2d at 1098.

Furthermore, the Report makes no explicit statement that Agbapuruonwu was involved in Helen's crime. Rather, the Report specifies that Helen — a "Virginia Woman" — was the sole target of the welfare fraud investigation and that Helen alone was charged with a crime. The implication that Agbapuruonwu was somehow involved in Helen's crime cannot reasonably be drawn from the Report's discussion of Agbapuruonwu

15

following its coverage of Helen's investigation and arrest. On the contrary, the Report's portrayal of Agbapuruonwu as a successful attorney and businessman simply supports the statement that Helen had, in fact, committed welfare fraud.

Moreover, as discussed above, the Report did not misattribute the statements in the Magistrate's Notes. And the Report's incorporation of true information about Agbapuruonwu, including that he immigrated to the United States from Nigeria, received a prestigious fellowship to study law, and previously worked for Mayer Brown in Washington, D.C., also does not reasonably imply that he committed a crime. Although we are sensitive to the Report's subsequent appropriation by several pundits and media outlets espousing anti-immigrant sentiments, those malicious reactions to the Report do not expand what it is reasonably capable of implying. *See Webb*, 752 S.E.2d at 812 (reinforcing that defamatory-implication inquiry is a matter of law, not fact).

In sum, the Report does not reasonably imply that Agbapuruonwu was involved in Helen's crime. We therefore conclude that Agbapuruonwu fails to allege a plausible claim for defamation per se based on implication.

III.

Having concluded that Agbapuruonwu fails to state a claim of defamation per se, we turn to NBC's cross-appeal of the district court's denial of its request for attorney fees pursuant to Virginia Code section 8.01-223.2. "[T]he decision whether and in what amount to award attorney fees is one committed to the award court's discretion, subject only to review for abuse of that discretion." *See Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*,

16

846 F.3d 716, 729 (4th Cir. 2017) (internal quotation marks and alterations omitted); *see also Med. Protective Co. v. Pang*, 740 F.3d 1279, 1282 (9th Cir. 2013) (applying the same standard of review to the denial of attorney fees under state law).

Because Agbapuruonwu waived argument regarding Virginia Code section 8.01-223.2's applicability to the Report by failing to raise the issue in his opening brief, we are left only to determine whether the district court abused its discretion in denying NBC's request for attorney fees pursuant to the fee-shifting provision of the statute. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017). The fee-shifting provision of Virginia Code section 8.01-223.2 provides that "[a]ny person who has a suit against him dismissed . . . pursuant to the immunity provided by [Virginia Code section 8.01-223.2(A)] *may* be awarded reasonable attorney fees and costs." Va. Code § 8.01-223.2(B) (emphasis added). "The word 'may' means just what it says:  that a court has discretion to award (or not to award) attorney's fees." *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1335 (4th Cir. 1996). Informed by our reading of the fee-shifting provision, we discern no abuse of discretion in the district court's denial of NBC's request for attorney fees.

IV.

For the foregoing reasons, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid in the decisional process.

*AFFIRMED*

17