**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-1989

REMA DAWSON-MURDOCK,

Plaintiff – Appellant,

v.

NATIONAL COUNSELING GROUP, INC.; NATIONAL COUNSELING GROUP, INC. PLAN,

Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:18-cv-00058-JAG)

Argued: May 8, 2019                    Decided: July 24, 2019

Before KING, DIAZ, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Diaz and Judge Quattlebaum joined.

**ARGUED:** Elizabeth Hopkins, KANTOR & KANTOR LLP, Northridge, California, for Appellant. Jeremy David Capps, HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C., Glen Allen, Virginia, for Appellees. **ON BRIEF:** Michelle L. Roberts, KANTOR & KANTOR LLP, Northridge, California, for Appellant. Laura Lee Miller, HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C., Glen Allen, Virginia, for Appellees.

KING, Circuit Judge:

Plaintiff Rema Dawson-Murdock ("Rema") appeals from the dismissal of her civil action in the Eastern District of Virginia. Rema sued National Counseling Group, Inc. ("NCG"), alleging two claims under the Employee Retirement Income Security Act of 1974 ("ERISA") (codified primarily in Title 29 of the United States Code). *See Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, No. 3:18-cv-00058 (E.D. Va. Jan. 26, 2018), ECF No. 1 (the "Complaint").[1] More specifically, the Complaint alleges that NCG contravened ERISA by breaching its fiduciary duties in the administration of a group life insurance plan in which Rema's late husband had enrolled and for which NCG is the "named fiduciary." The district court dismissed Rema's ERISA claims pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that NCG's relevant actions were not taken in a fiduciary capacity. *See Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, No. 3:18-cv-00058 (E.D. Va. Aug. 7, 2018), ECF No. 12 (the "Opinion"). Because the Complaint sufficiently alleges NCG's fiduciary status in relation to those claims, we vacate and remand.

---

[1] The Complaint also names a second defendant, the National Counseling Group, Inc. Plan, but it contains no allegations against that defendant. *See* 29 U.S.C. § 1132(d)(1) (authorizing suit against employee benefit plan). The district court described the National Counseling Group, Inc. Plan as a nominal defendant that does not exist apart from NCG. Rema does not contest that description, and she focuses her arguments only on her claims against NCG.

I.

A.

Because this appeal stems from a Rule 12(b)(6) dismissal, we accept the facts alleged in the Complaint as true and recite them in the light most favorable to Rema. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 680 (4th Cir. 2019). As part of the benefits package that it offers to employees, NCG provides its workers the opportunity to enroll in a group life insurance plan (the "Plan"). The insurer for the Plan is Unum Life Insurance Company of America ("Unum"). The documents that constitute the Plan are the Summary of Benefits and the Summary Plan Description (the "SPD").[2]

The Summary of Benefits explains that an NCG employee who desires to enroll in the Plan must pay a premium to NCG, which in turn sends the premium payment to Unum. In addition to transmitting premiums, NCG is obliged to "regular[ly]" provide Unum with information about employees "who are eligible to become insured; whose amounts of coverage change; and[] whose coverage ends." *See* J.A. 28.[3]

---

[2] A summary plan description (or SPD) has been defined as an "outline of an employee benefit plan, containing such information as the identity of the plan administrator, the requirements for eligibility and participation in the plan, circumstances that may result in disqualification or denial of benefits, and the identity of any insurers responsible for financing or administering the plan." *See* Black's Law Dictionary (10th ed. 2014). In this appeal, we consider the SPD and the Summary of Benefits — which are attached to the Complaint — because those documents are integral to the ERISA claims and neither party questions their authenticity. *See Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

[3] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

The SPD specifies that, for the purposes of ERISA, NCG "is the [p]lan [a]dministrator and *named fiduciary* of the Plan," and that benefits under the Plan are "administered" by Unum. *See* J.A. 65 (emphasis added). The SPD also explains that "ERISA imposes duties upon the people who are responsible for the operation of the . . . [P]lan," and that "[t]he people who operate [the] Plan, called 'fiduciaries' of the Plan, have a duty to do so prudently and in the interest of . . . Plan participants and beneficiaries." *Id.* at 71. And the SPD instructs Plan participants and beneficiaries to contact NCG if they have questions about the Plan.

## B.

While working full-time for NCG, Rema's late husband, Wayne Murdock ("Wayne"), elected $150,000 in life insurance coverage through the Plan. Wayne identified Rema as his primary beneficiary for any benefits resulting from the coverage. To secure that coverage, Wayne paid premiums to NCG, which forwarded those payments to Unum.

On March 21, 2016, Wayne stopped working full-time for NCG and began working part-time for it. Although enrollment in the Plan is limited to full-time NCG employees, NCG either never informed or misinformed Wayne about whether he remained eligible to participate in the Plan. Additionally, although Wayne could have converted or ported his life insurance coverage after transitioning to part-time status, NCG never notified him of

4

those options.[4]  The parties have not disputed that Wayne continued to pay premiums to NCG after March 21, 2016, despite his apparent ineligibility.

On August 30, 2016, Wayne died.  Rema, as Wayne's widow and beneficiary, thereafter submitted a life insurance benefits claim for $150,000 to Unum pursuant to Wayne's participation in the Plan.  On October 24, 2016, before Rema heard anything from Unum regarding her claim, Christopher Baham — NCG's Vice President of Human Resources — emailed Rema to notify her that Unum had denied it.  Baham assured Rema, however, that NCG would directly pay her the claim amount and work with Unum to recoup the payment.  Baham also advised Rema that she would "not have to deal with Unum insurance company going forward."  *See* Complaint ¶ 16.  Three days later, on October 27, 2016, she received a letter from Unum stating that it had denied her benefits claim because Wayne "was not eligible for coverage due to his part-time status and [he] failed to convert or port his coverage."  *Id.* ¶ 17.

During the next four months, Rema and Vice President Baham communicated regularly regarding her life insurance benefits claim.  Those communications included the following:

- On November 7, 2016, Rema emailed a copy of Unum's denial letter to Baham and asked him for advice regarding her next steps;

- The following day, Baham responded via email and told Rema that she did not need to do anything else, such as appeal the claim denial, and that NCG was "working through the details," *see* Complaint

---

[4] Under the Plan, to convert coverage means to change from a group insurance policy to an individual insurance policy.  On the other hand, to port coverage means to maintain coverage under the group insurance policy.

5

¶¶ 20, 39;

- On November 15, 2016, Baham emailed Rema and said that NCG was still working on her claim;

- About two weeks later, Baham again emailed Rema, stating that NCG was "working through a separate insurance company to pay out Wayne's benefits," and that Unum would "not be involved at all." *Id.* ¶ 22. He again reassured her that "the claim" would be paid, *id.*;

- On December 8, 2016, Baham told Rema that he was "making progress toward resolution of the payment," *id.* ¶ 23;

- Later that month, Baham wrote to Rema that "NCG was still moving forward," *id.* ¶ 24;

- On January 19, 2017, Baham emailed Rema to advise her that he had "escalated [her claim] to another level so [he] hope[d] to soon have [a] resolution on [NCG's] side," *id.* ¶ 25;

- During the first two weeks of February 2017, Baham told Rema that he was still working on the claim, that it appeared a resolution was "close," and that there had been "some slow progress" on the claim, *id.* ¶¶ 27, 28; and

- Finally, on February 21, 2017, Baham emailed Rema and asked to speak with her by telephone. During the ensuing phone call, Baham informed her that NCG would not pay her any money on the claim.

Based on the representations made to her by Vice President Baham from October 2016 through February 2017, Rema did not appeal Unum's denial of her benefits claim. By the time Baham informed Rema that NCG would not pay her claim, the ninety-day window for her to file an appeal with Unum had closed.[5]

---

[5] According to the SPD, a participant or beneficiary must appeal a denial of a claim within ninety days of receiving Unum's denial letter. Because Rema received her denial letter on October 27, 2016, she had until January 25, 2017, to lodge an appeal with Unum.

## C.

In January 2018, Rema filed her Complaint against NCG in the Eastern District of Virginia. Pertinent to this appeal, the Complaint alleges two causes of action under a provision of ERISA that authorizes a participant or beneficiary of an employee benefit plan subject to ERISA to pursue a civil action to obtain "appropriate equitable relief" for violations of certain ERISA provisions "or the terms of the plan." *See* 29 U.S.C. § 1132(a)(3).[6] In the first ERISA claim, the Complaint alleges that NCG breached the fiduciary duty that it owed to Wayne, as a Plan participant, because it either failed to inform him or misinformed him about his continued eligibility under the Plan and neglected to notify him that he had the option to convert or port his life insurance coverage. In the second ERISA claim, the Complaint alleges that NCG breached the fiduciary duty that it owed to Rema, as a Plan beneficiary, when Vice President Baham advised her that she need not appeal Unum's denial of her benefits claim.[7]

On March 30, 2018, NCG moved the district court for dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of its dismissal motion, NCG argued that neither it nor Vice President Baham was acting as a fiduciary when they took the actions underlying Rema's ERISA claims. That is, NCG maintained that it and

---

[6] The parties in these proceedings do not dispute that the Plan is subject to the provisions of ERISA. *See* 29 U.S.C. § 1003(a) (defining employee benefit plan governed by ERISA).

[7] The Complaint also alleged two state law claims, which the district court dismissed as preempted by ERISA. Rema does not contest on appeal the dismissal of those two claims.

Baham were acting only in an administrative capacity for the Plan, which did not satisfy ERISA's definition of a "fiduciary," as codified in 29 U.S.C. § 1002(21)(A). Thus, according to NCG, they could not have breached any fiduciary duties owed to Wayne or Rema.

On August 7, 2018, the district court granted NCG's motion to dismiss and dismissed Rema's claims. In its accompanying Opinion, the court ruled that the Complaint failed to sufficiently allege that NCG satisfies ERISA's definition of a fiduciary. The Opinion explained that, in order to qualify as a fiduciary under ERISA, an employer must have some "discretionary control over" the employee benefit plan. *See* Opinion 5. And the Opinion concluded that the Complaint did not adequately allege that NCG (and its high-ranking employee, Vice President Baham) exercised "discretionary control regarding benefits decisions" under the Plan. *Id.* at 6. Instead, the Opinion emphasized that Unum made the benefits decisions for the Plan. The Opinion also described NCG's and Baham's alleged actions as merely "administrative" and thus not of a fiduciary nature. *Id.* at 5. Rema noted a timely appeal from the dismissal rulings, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.[8]

---

[8] Although neither the dismissal order nor the Opinion specified whether the Complaint was dismissed with prejudice, nothing in the record rebuts the presumption that it was so rendered. *See McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009) ("Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice.").

II.

We review de novo a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2019). In conducting such a review, we accept the complaint's "factual allegations as true and draw all reasonable inferences in favor of the plaintiff[]." *Id.* "A district court can properly grant a Rule 12(b)(6) dismissal only if the complaint fails to contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted).

III.

On appeal, Rema contests the district court's dismissal of her two ERISA claims. She contends that NCG's alleged conduct necessarily constitutes fiduciary activity because NCG is both the plan administrator and the named fiduciary. Even if those roles are insufficient to establish that NCG's conduct in relation to the Plan is fiduciary in nature, Rema maintains that NCG and Vice President Baham functioned as fiduciaries in taking the actions alleged in the Complaint, and that the Opinion erred in ruling otherwise.[9] Specifically, she maintains that NCG acted in a fiduciary capacity by: (1) failing to inform

---

[9] Except when describing Baham's individual actions, our discussion of the ERISA claims hereinafter refers to NCG and Vice President Baham collectively as "NCG." The parties do not dispute that we can consider Baham's conduct against NCG in assessing the ERISA claims. *See Deschamps v. Bridgestone Ams., Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 278-79 (6th Cir. 2016) (applying agency principles to employee in assessing breach of fiduciary duty claim against employer).

or misinforming Wayne about his continued eligibility under the Plan and neglecting to notify Wayne that he had the option to convert or port his life insurance coverage; and (2) advising Rema not to appeal Unum's denial of her benefits claim. Before assessing the alleged fiduciary misconduct, we will identify and discuss some pertinent legal principles regarding ERISA fiduciaries.

## A.

ERISA specifies several duties, "derived from the common law of trusts," that are imposed on a fiduciary for an employee benefit plan. *See Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015) (internal quotation marks omitted); *see also* 29 U.S.C. § 1104(a) (defining "standard of care" for ERISA fiduciary); *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) ("The[] responsibilities imposed by ERISA have the familiar ring of their source in the common law of trusts."). To allege a breach of any such fiduciary duty, a plan participant or beneficiary must first establish "that the party charged with the breach" is, in fact, a fiduciary. *See Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 60 (4th Cir. 1992).

ERISA contemplates two general types of fiduciaries. *See, e.g.*, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993); *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996). The first type is a "named fiduciary," which — as the term suggests — is "a fiduciary who is named" in the plan documents. *See* 29 U.S.C. § 1102(a)(2).[10] The Act requires every

---

[10] A "named fiduciary" also includes "a fiduciary . . . who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." *See* 29 U.S.C. § 1102(a)(2). ERISA permits a named fiduciary "to designate persons other than named fiduciaries to carry out fiduciary (Continued)

10

covered employee benefit plan to "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan." *Id.* § 1102(a)(1). That obligation "ensures that responsibility for managing and operating the plan — *and liability for mismanagement* — are focused with a degree of certainty." *See Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 371 (4th Cir. 2014) (alterations and internal quotation marks omitted).

The second type of fiduciary contemplated by ERISA has been called a "functional fiduciary." *See Tatum*, 761 F.3d at 357 n.6. Section 1002(21)(A) of Title 29 defines such a fiduciary and provides that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*See* 29 U.S.C. § 1002(21)(A). In summarizing the two general types of ERISA fiduciaries, we have explained that "the concept of a fiduciary under ERISA . . . includes not only those named as fiduciaries in the plan instrument, . . . but [also] any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or

---

responsibilities . . . under the plan." *See id.* § 1105(c)(1)(B). Here, the Plan does not designate any person or entity other than NCG to carry out fiduciary responsibilities with respect to plan administration. That is, NCG is the only named fiduciary for plan administration.

11

administration of a plan." *See Custer*, 89 F.3d at 1161 (alterations and internal quotation marks omitted).

In assessing whether a person or entity qualifies as a fiduciary under ERISA, we have consistently utilized an interpretive bulletin published by the Department of Labor in 1975. *See* 29 C.F.R. § 2509.75-8; *Custer*, 89 F.3d at 1162; *Coleman*, 969 F.2d at 61-62.[11] The bulletin emphasizes that "[s]ome offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more [of the] functions" described in ERISA's definition of a "fiduciary," provided in section 1002(21)(A). *See* 29 C.F.R. § 2509.75-8 (D-3). For example, "a plan administrator . . . must, [by] the very nature of his position, have discretionary authority or discretionary responsibility in the administration of the plan." *Id.* (internal quotation marks omitted). Consequently, "[p]ersons who hold such positions will . . . be fiduciaries." *Id.* On the other hand, the 1975 Department of Labor bulletin suggests that "a person who performs purely ministerial functions . . . within a framework of policies, interpretations, rules, practices and procedures made by other persons," such as applying "rules determining eligibility for participation or benefits," "advising participants of their rights and options under the plan," and collecting "contributions . . . as provided in the plan," is not acting in a fiduciary capacity. *See id.* at (D-2). In sum, the 1975 bulletin explains that a plan administrator is a functional fiduciary with respect to plan administration, but a person or entity that is not a

---

[11] ERISA authorizes the Secretary of Labor to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of [the Act]." *See* 29 U.S.C. § 1135.

plan administrator and performs only ministerial functions in relation to a plan is not a functional fiduciary.

B.

1.

We begin our analysis of this appeal with Rema's position that NCG's joint roles as the plan administrator and the named fiduciary definitively answer the fiduciary capacity inquiry. Our precedents on the topic of fiduciary capacity under ERISA have addressed primarily the nature of a functional fiduciary — perhaps because plan administrators and named fiduciaries do not normally disclaim their fiduciary roles and responsibilities in the federal courts. *See, e.g.*, *Gordon v. CIGNA Corp.*, 890 F.3d 463, 474-76 (4th Cir. 2018); *Custer*, 89 F.3d at 1162-63; *Coleman*, 969 F.2d at 61-62. But we are now confronted with precisely such a situation. That is, despite being identified as both the plan administrator and the named fiduciary for the Plan, NCG maintains in these proceedings that it is not a fiduciary for the purposes of Rema's ERISA claims.

Calling NCG's assertion into substantial doubt, the Supreme Court has itself recognized that, as logic would suggest, a named fiduciary is "an ERISA fiduciary." *See Mertens*, 508 U.S. at 251 (internal quotation marks omitted). And we have expressed a similar, common-sensical understanding. *See Tatum*, 761 F.3d at 371 ("[T]he Committees are the only named fiduciaries in the governing Plan document. As such, these entities are proper defendants in a suit alleging breach of fiduciary duty with respect to the Plan."); *Custer*, 89 F.3d at 1161 ("[T]he concept of a fiduciary under ERISA . . . includes . . . those named as fiduciaries in the plan instrument."). We have likewise recognized that "a plan

13

administrator is a fiduciary with respect to her own policy." *See Canada Life Assurance Co. v. Estate of Lebowitz*, 185 F.3d 231, 237 (4th Cir. 1999).  In addition, other courts of appeals have ruled that a plaintiff establishes a defendant's fiduciary capacity by alleging that the defendant is the named fiduciary for an ERISA plan.  *See, e.g.*, *Jordan v. Fed. Express Corp.*, 116 F.3d 1005, 1014 & n.16 (3d Cir. 1997) (emphasizing that named fiduciary in plan instrument is fiduciary); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1498 (10th Cir. 1995) (concluding that complaint sufficiently demonstrated defendants' fiduciary capacities by alleging that defendants were named fiduciaries).

To the extent that our decisions have said that "being a fiduciary under ERISA is not an all-or-nothing situation," our Court has never done so in the context of assessing whether a plan administrator and a named fiduciary is, in fact, a fiduciary.  *See Gordon*, 890 F.3d at 474 (assessing status of functional fiduciary).  That is, our recognition of such a principle — that ERISA fiduciary status can be a fluid concept — has come in assessing the nature of a functional fiduciary, as defined by section 1002(21)(A) of Title 29.  *See id.*; *Coleman*, 969 F.2d at 61-62.  And that principle makes sense in light of ERISA's definition of a functional fiduciary.  *See Coleman*, 969 F.2d at 61 ("[T]he inclusion of the phrase 'to the extent' in § 1002(21)(A) means that a party is a fiduciary only as to the activities which bring the person within the definition.").

Our precedents should not, however, be unduly expanded to suggest that an entity that serves as both the plan administrator and the named fiduciary for an ERISA-covered plan is *not* an ERISA fiduciary.  Doing so would ignore ERISA's undisputable recognition

14

of named fiduciaries.[12]  And such a ruling would create conflicts with controlling Supreme Court precedent, *see Mertens*, 508 U.S. at 251; our relevant decisions, *see Tatum*, 761 F.3d at 371; *Custer*, 89 F.3d at 1161; and the decisions of our sister circuits, *see, e.g.*, *Jordan*, 116 F.3d at 1014 & n.16.  In addition, the adoption of a rule that requires a plan participant or beneficiary to allege, in every case, that the plan administrator and named fiduciary is also a functional fiduciary would undermine our obligation to liberally construe fiduciary status under ERISA.  *See Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 123 (4th Cir. 1991) (emphasizing that ERISA is a "remedial statute" that "should be liberally construed in favor of protecting the participants in employee benefits plans"); *see also Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (explaining that courts "construe ERISA fiduciary status liberally, consistent with ERISA's policies and objectives" (internal quotation marks omitted)).  Put succinctly, a participant or beneficiary is generally not required to allege that the plan administrator and named fiduciary also satisfies the functional fiduciary test in order to state a plausible fiduciary breach claim against it under ERISA.[13]

---

[12] ERISA employs the terms "named fiduciary" and "named fiduciaries" in five separate sections.  *See* 29 U.S.C. §§ 1002(18), 1102, 1103(a), 1105(c), 1133(2).

[13] We are not suggesting that a plan administrator and named fiduciary (serving in those dual roles) will be subject to suit for breach of fiduciary duty as to all plan-related actions.  For example, liability might be limited by the exercise of authority or control over only certain plan-related activities.  *See* 29 C.F.R. § 2509.75-8 (FR-13) (explaining that named fiduciary will "not be liable for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities which have been allocated to them," with certain exceptions).  Similarly, there is no liability for breach of fiduciary duty if the challenged conduct of the plan administrator and named fiduciary is not fiduciary in nature, as there (Continued)

15

In concluding that the Complaint fails to sufficiently allege NCG's fiduciary status, the Opinion failed to consider and assess the relevant decisions on plan administrators and named fiduciaries and their application to these ERISA claims. Indeed, it did not recognize the significance of NCG's status as the joint plan administrator and named fiduciary, and it erroneously focused on our precedents addressing functional fiduciaries. Although those errors alone support a vacatur and a remand, the Opinion also erred in making its functional fiduciary analysis.

2.

Aside from NCG's plausibly alleged fiduciary status resulting from its joint roles as the plan administrator and the named fiduciary, we are satisfied that the Complaint sufficiently alleges that NCG is a fiduciary with respect to the particular conduct giving rise to Rema's ERISA claims. That is, the Complaint shows that NCG acted as a functional fiduciary, within the meaning of section 1002(21)(A) of Title 29, with respect to each of the ERISA claims. We will address separately the facts that support those two claims.

a.

In her first ERISA claim, Rema alleges that NCG failed to inform or misinformed Wayne about his continued eligibility under the Plan. She further alleges that NCG

---

can be no breach of a nonexistent fiduciary duty. *See Pegram*, 530 U.S. at 226 (explaining that "the threshold question" in assessing a breach of fiduciary duty claim is whether the person charged with the breach was performing a fiduciary responsibility "when taking the action subject to the complaint"); *Livick v. Gillette Co.*, 524 F.3d 24, 29 (1st Cir. 2008) (recognizing that "[a] fiduciary named in an ERISA plan can undertake non-fiduciary duties").

16

neglected to notify Wayne that he had the option to convert or port his life insurance coverage. Based on the relevant precedents and the Department of Labor's 1975 bulletin, we are satisfied that this claim adequately pleads NCG's status as a functional fiduciary.

In *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379-84 (4th Cir. 2001), we approved a fiduciary breach claim where a plan administrator had failed to correct the plan participant's material misunderstanding of the relevant plan, and where that misunderstanding had caused an economic loss to the participant. We explained that the plan administrator was required to speak up "'when [it] kn[ew] that [its] silence might be harmful.'" *Id.* at 380 (quoting *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993)). To support that proposition, we relied on the decision of another court of appeals that recognized a breach of fiduciary duty claim where "'an ineligible person contributes to a fund'" and the plan fiduciary fails "'to inform him of his ineligibility within a reasonable time.'" *See id.* at 381 (quoting *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990)).

In our 2018 *Gordon* decision, we were again confronted with a breach of fiduciary duty claim predicated on the defendant's silence. There, an employee had paid supplemental life insurance premiums to his employer for coverage under a group life insurance plan, and the employer submitted the premium payments to the insurer for the plan. *See Gordon*, 890 F.3d at 469. When the employee died, his beneficiary filed a claim for supplemental life insurance benefits with the insurer. *Id.* at 468. Despite its acceptance of the employee's premiums, the insurer denied the beneficiary's claim because the employee had failed to submit certain paperwork demonstrating his eligibility for

17

supplemental coverage. *Id.* The plaintiff sued the insurer under ERISA, alleging a claim for breach of fiduciary duty based on the insurer's failure "to notify [the employee] that he needed to submit additional evidence of insurability — while simultaneously collecting premiums for unapproved coverage." *Id.* at 469.

On appeal from a summary judgment award to the insurer, we observed that the plan documents designated the insurer as the claim administrator and the employer as the plan administrator. *See Gordon*, 890 F.3d at 474. Although the insurer was responsible for adjudicating benefits claims under the plan, we ruled that it was not a fiduciary with respect to the failure to notify the employee about the paperwork requirement. *Id.* Instead, we ruled that the fiduciary for a claim related to that failure was the employer, which the plan documents tasked with "day-to-day program administration," such as collecting premiums, verifying eligibility, and submitting applications for supplemental coverage. *Id.* (internal quotation marks omitted).

Our *Griggs* and *Gordon* precedents undermine the Opinion's ruling that the first ERISA claim fails to allege NCG's fiduciary capacity. That is, when a plan administrator is responsible for verifying employee eligibility for participation in an employee benefit plan, that administrator acts in a fiduciary capacity with regard to that obligation. *See Gordon*, 890 F.3d at 474. Additionally, a plan administrator acts in a fiduciary capacity when it conveys (or fails to convey) material information to a plan participant concerning the retention of eligibility for a benefit plan when that administrator is aware that the participant wishes to maintain his participation therein. *See Griggs*, 237 F.3d at 381-82; *Eddy*, 919 F.2d at 751. Viewed in the light most favorable to Rema, the Complaint

18

plausibly alleges that, in these circumstances, NCG performed such fiduciary activities as the plan administrator.

If there were any doubt about whether the allegations in support of the first ERISA claim establish NCG's status as a functional fiduciary pursuant to section 1002(21)(A), it is entirely assuaged by NCG's role as the plan administrator. As the Department of Labor has explained, a plan administrator by "the very nature of [its] position, ha[s] discretionary authority or discretionary responsibility in the administration of the plan within the meaning of section [1002(21)(A)]," and is therefore a functional fiduciary. *See* 29 C.F.R. § 2509.75-8 (D-3); *Estate of Lebowitz*, 185 F.3d at 237 ("By the very nature of the position, a plan administrator is a fiduciary with respect to her own policy."); *U.S. Steel Mining Co. v. Dist. 17, United Mine Workers of Am.*, 897 F.2d 149, 152 (4th Cir. 1990) ("As the plan administrator, the fund is clearly a fiduciary.").[14]

b.

Turning to Rema's second ERISA claim, she alleges therein that NCG breached the fiduciary duty that it owed to her as a beneficiary when Vice President Baham advised her

---

[14] In dismissing Rema's first ERISA claim, the Opinion relied primarily on an unpublished decision ruling that an employer was not acting as a fiduciary when it accepted an employee's life insurance premiums "without advising him that he was not eligible for group life insurance" under the employer's group life insurance plan. *See* Opinion 4-5 (citing *Moon v. BWX Tech., Inc.*, 577 F. App'x 224, 231 (4th Cir. 2014)). Our non-precedential decision in *Moon*, however, failed to mention *Griggs*, which was decided thirteen years earlier. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that unpublished decisions "have no precedential value" and "are entitled only to the weight they generate by the persuasiveness of their reasoning" (internal quotation marks omitted)). And, unlike this case, the employer in *Moon* was neither a plan administrator nor a named fiduciary.

19

not to appeal Unum's denial of her benefits claim. Pertinent to this claim, the Supreme Court and our Court have both recognized that conveying information about plan benefits to a beneficiary in order to assist plan-related decisions can constitute fiduciary activity. *See Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (explaining that "[c]onveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation" is a fiduciary activity); *Griggs*, 237 F.3d at 379-80 (accepting that plan administrator acted in fiduciary capacity by communicating with participant about pension benefits).

In these circumstances, we are satisfied that the Complaint plausibly alleges that Vice President Baham engaged in a fiduciary activity when he instructed Rema that she need not appeal Unum's decision denying her benefits claim. In so instructing Rema, Baham was not merely "advising [a] participant[] of [her] rights and options under the [P]lan." *See* 29 C.F.R. § 2509.75-8 (D-2). Instead, in responding to Rema's request for assistance, Baham offered tailored advice concerning her decision on whether to pursue an appeal. *See* J.A. 71 (stating that Plan beneficiary should contact NCG if she has questions about the Plan). Such conduct by an employee imbued with a plan administrator's authority constitutes discretionary activity in the "administration" of the plan, and it is thus a fiduciary activity under ERISA. *See* 29 U.S.C. § 1002(21)(A)(iii) (providing that a person is a functional fiduciary when "he has any discretionary authority or discretionary responsibility in the administration of [a] plan"); *In re DeRogatis*, 904 F.3d 174, 192 (2d

20

Cir. 2018) (explaining that individualized consultation regarding plan benefits constitutes fiduciary activity).[15]

IV.

Pursuant to the foregoing, we vacate the district court's dismissal of the ERISA claims and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[15] The Opinion relied on another unpublished decision in dismissing the second ERISA claim. *See* Opinion 4-5 (citing *Estate of Weeks v. Advance Stores Co.*, 99 F. App'x 470 (4th Cir. 2004)). That decision is both non-precedential and distinguishable. *Weeks* ruled that an administrative employee was not an ERISA fiduciary when she "simply repeated information that was given to her by upper-management or that had already been inputted into the company's computer database." *See Estate of Weeks*, 99 F. App'x at 476. In contrast, Vice President Baham offered tailored advice, over a sustained period, regarding Rema's right to prosecute an appeal, and the Complaint does not reveal that he was merely relaying or repeating information.