**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1491**

EDWARD ODJAGHIAN; GORDON NASTA,

    Plaintiffs – Appellants,

  v.

HHS TECHNOLOGY GROUP, LLC; BRADLEY WHITE,

    Defendants – Appellees,

  and

ENGAGEPOINT, INC.; BREVET CAPITAL MANAGEMENT, LLC,

    Defendants.

Appeal from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Chief District Judge.  (1:18-cv-00151-JKB)

Argued:  September 8, 2020        Decided:  March 2, 2021

Before KING and FLOYD, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Kleeh wrote the opinion, in which Judge King and Judge Floyd joined.

**ARGUED:**  Jack Bradley Jarrett, III, ALAN LESCHT & ASSOCIATES P.C., Washington, D.C., for Appellants.  Peter Shaun Dulin Jaffe, FRESHFIELDS

BRUCKHAUS DERINGER US LLP, Washington, D.C., for Appellees. **ON BRIEF:** Howard K. Kurman, Russell B. Berger, OFFIT KURMAN, P.A., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

KLEEH, District Judge:

Edward Odjaghian and Gordon Nasta appeal the District Court's Order dismissing their complaint against HHS Technology Group, LLC, Bradley White and Brevet Capital Management, LLC for failure to state a claim upon which relief can be granted. Finding no error, we affirm.

## I.

## A.

Because this appeal stems from a Rule 12(b)(6) dismissal, we accept the facts alleged in the complaint as true and recite them in the light most favorable to Odjaghian and Nasta. *See Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 271-72 (4th Cir. 2019). Odjaghian and Nasta worked as executives for EngagePoint, Inc. ("EngagePoint"), a healthcare technology company. (J.A. 7, 10).[1] EngagePoint began experiencing financial trouble, obtained venture capital from a lender to continue operations, and provided the lender a security interest in EngagePoint's assets. (J.A. 7, 10-11). Appellants do not allege the lender ever took any ownership interest in EngagePoint. (J.A. 46; *see generally* J.A. 6-17). When those financial difficulties continued, EngagePoint asked – and Appellants agreed – to defer their salaries and bonuses before EngagePoint eventually terminated Appellants as a cost-saving measure. (J.A. 7, 10, 12). Odjaghian and Nasta signed multiple severance agreements which outlined a compensation

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

3

schedule for monies EngagePoint owed them. (J.A. 7, 12; *see* J.A. 101-06, 108-15, 125-28).

After making the initial payment required under the severance agreements, Bradley White ("White"), EngagePoint's Chief Executive Officer, informed Odjaghian and Nasta that EngagePoint's lender had foreclosed on the venture capital loans and sold its assets to HHS Technology Group, LLC ("HHS"), a limited-liability company organized only one day after the asset purchase. Odjaghian and Nasta allege that sale was fraudulent and intended to avoid EngagePoint's obligations under the severance agreements. (J.A. 8, 12-14). The sale rendered EngagePoint unable to pay the compensation owed its former employees. (J.A. 8, 12-14). HHS hired White and other EngagePoint employees and provided healthcare technology products to many of the same customers EngagePoint had supplied. (J.A. 14). Odjaghian and Nasta alleged "EngagePoint continue[d] to exist[] and . . . ha[d] active services contracts with several states." (J.A. 13).

B.

Odjaghian and Nasta filed their complaint, alleging diversity jurisdiction, against EngagePoint, HHS (as EngagePoint's successor), White and the lender, Brevet Capital Management LLC ("Brevet Capital") (collectively, "Defendants"). (J.A. 6-17). They alleged Defendants failed to pay their unpaid wages, in violation of the Maryland Wage Payment and Collection Law (the "MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509 (LexisNexis 2016 & Supp. 2019). (J.A. 6-29). Odjaghian and Nasta also alleged that EngagePoint and HHS breached the severance agreements by failing to pay their deferred compensation and that Brevet Capital conducted a commercially unreasonable

4

foreclosure sale of EngagePoint's assets, violative of Md. Code Ann., Com. Law § 9-610 (LexisNexis 2013).  (J.A. 8, 16-17).

Brevet Capital, HHS, and White filed motions to dismiss under Rules 12(b)(2) and 12(b)(6).  (J.A. 29-60).  They collectively argued the district court lacked personal jurisdiction over Brevet Capital and Odjaghian and Nasta failed to state a claim for which relief could be granted.  (J.A. 45-60).  Following briefing including Appellants response (J.A. 66-80) and Defendants' reply (J.A. 133-52), the district court granted the motion to dismiss.  (J.A. 153-69).  Initially, the district court concluded it lacked personal jurisdiction over Brevet Capital.  (J.A. 154 n.1, 157-59).

The district court also addressed the breach of contract and wage claims against HHS, ruling HHS was not liable for EngagePoint's debts under either theory of corporate successor liability which Odjaghian and Nasta advanced.  (J.A. 159-64 & n.5). Specifically, the district court found that bare allegations in the complaint did not warrant application of the fraud exception to successor liability.  (J.A. 160-61).  Regarding Odjaghian and Nasta's claim HHS was a mere continuation of EngagePoint, the district court concluded that although Odjaghian and Nasta "plainly alleged facts showing a continuity of *business enterprise* between EngagePoint and HHS, [Appellants] failed to allege facts showing a continuity of [*a single*] *corporate entity*."  (J.A. 162 & n.4; *see* J.A. 161-63).  The court also noted "HHS . . . gave fair consideration for EngagePoint's assets." (J.A. 163 (relying on *Acad. of IRM v. LVI Env't Servs., Inc.*, 687 A.2d 669 (Md. 1997)); *see* J.A. 163-64).

5

Lastly, the district court rejected Odjaghian and Nasta's assertion that White qualified as an employer under the MWPCL because they failed to properly allege they had a contract with White for the payment of wages; instead, Appellants repeatedly alleged they had entered into their employment contracts with EngagePoint. (J.A. 164-67). The district court, by order entered July 6, 2018, dismissed with prejudice the claims against Brevet Capital, HHS, and White, but noted that the case remained open pending resolution of Appellants' motion for default judgment against EngagePoint. (J.A. 169). The district court granted Appellants' motion for default judgment against EngagePoint and Odjaghian and Nasta filed their notice of appeal from that order on August 6, 2018 (J.A. 170). The district court entered final judgment on March 18, 2019, awarding Odjaghian $340,493.77 and Nasta $1,031,718.78. (J.A. 5).

## II.

"We review *de novo* a district court's dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Dawson-Murdock*, 931 F.3d at 274. In conducting that review, we accept as true all allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Id.* at 274-75 (quoting *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 685 (4th Cir. 2018)). As is well-settled now, a district court may only dismiss a case on a Rule 12(b)(6) motion that fails to state a plausible claim for relief even when assuming all factual allegations as true. *Id.* at 275; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Put another way, "plaintiff[s] must provide sufficient detail to show that [they have] a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018).

6

III.

On appeal, Odjaghian and Nasta contest the district court's dismissal of most of their claims.[2] Specifically, Appellants appeal the dismissal as to HHS and White and assert the district court abused its discretion by dismissing the complaint with prejudice without providing the opportunity to amend. With that said, however, a preliminary issue – whether this Court has jurisdiction over the order granting the motion to dismiss – warrants attention. We address each in turn of significance.

A.

Although the parties neglected the matter, this Court must, as always, be satisfied jurisdiction exists to review the district court's order granting the relief sought in the Rule 12(b)(6) motion. *See Williamson v. Stirling*, 912 F.3d 154, 168 (4th Cir. 2018) (recognizing "independent obligation to verify the existence of appellate jurisdiction" (internal quotation marks omitted)). Of course, this Court may exercise jurisdiction only over final orders, 28 U.S.C. § 1291 (2018), and only certain interlocutory and collateral orders, 28 U.S.C. § 1292 (2018); Fed. R. Civ. P. 54(b); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 546 (1949).

---

[2] Although mentioned at various points in the record, Appellants' opening brief failed to challenge the district court's dismissal of Brevet Capital for lack of jurisdiction and the rejection of the fraud exception to successor liability. Therefore, Appellants waived appellate review of those issues. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument – even if its brief takes a passing shot at the issue." (alterations and internal quotation marks omitted)).

A premature notice of appeal, as found here, certainly creates a jurisdictional defect. However, that defect is a curable one under the doctrine of cumulative finality if the district court enters a final, appealable judgment prior to this Court considering an appeal. *Williamson*, 912 F.3d at 170; *see also Equip. Fin. Grp., Inc. v. Traverse Comput. Brokers*, 973 F.2d 345, 347-48 (4th Cir. 1992). This doctrine only applies to save a premature appeal if a party appeals from an order the district court could have certified for immediate appeal under Rule 54(b). *See Williamson*, 912 F.3d at 170; *see also In re Bryson*, 406 F.3d 284, 287-89 (4th Cir. 2005). Rule 54(b) empowers district courts to certify an order for immediate appeal when it directs entry of judgment "as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b); *see Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980) (noting that Rule 54(b) certification is appropriate if the order represents "an ultimate disposition of an individual claim entered in the court of a multiple claims action" (internal quotation marks omitted)).

Here, Appellants filed their notice of appeal prematurely; however, the district court could have certified its July 2018 order granting HHS and White's motion to dismiss because the court entered judgment on the individual claims against those defendants. This Court did not address the appeal prior to a final disposition below. Thus, pursuant to Rule 4(a)(2) of the Federal Rules of Appellate Procedure, the notice of appeal is considered filed in March 2019, on the date of the default judgment order. Therefore, Odjaghian and Nasta's notice of appeal is considered timely filed under the cumulative finality doctrine and this Court has jurisdiction to review the July 2018 district court order.

B.

8

We next turn to whether Appellants sufficiently pled facts to survive a Rule 12(b)(6) challenge on their successor liability claim.  Under Maryland law, "[g]enerally, a corporation [that] acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation." *See Martin v. TWP Enters. Inc.*, 132 A.2d 361, 371 (Md. 2016).  Maryland recognizes certain exceptions to this general rule.  *See id.* Relevant to the issue before this Court, "the predecessor corporation's debts and liabilities become the obligation of the successor corporation when . . . the purchasing corporation is a mere continuation of the selling corporation."  *Id.* (internal quotation marks omitted). Maryland courts consider several factors when analyzing the "mere continuation" exception:  "(1) any change in ownership and management, (2) the continued existence of the selling corporation, (3) the adequacy of consideration, (4) the transfer of any 'instrumental' employees from the predecessor to the successor, and (5) the purpose of the asset sale."  *Id.* at 377 (citing *Acad. of IRM*, 687 A.2d at 669; *Nissen Corp. v. Miller*, 594 A.2d 564, 565-66 (Md. 1991); *Balt. Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. Ct. Spec. App. 1989)).  A party must show more than a mere continuity of enterprise, that being a continuation of pretransaction and posttransaction business activities.  Instead, a party must show a true continuity of the corporate entity such as the continuation of directors, management, shareholder and ownership interest.  *See Acad. of IRM*, 687 A.2d at 677-78; *Nissen*, 594 A.2d at 567.

Considering all factual allegations in Odjaghian and Nasta's complaint, they fall short of the standard demanded by Rule 12(b)(6) in alleging HHS was a mere continuation of EngagePoint.  As the district court found, the complaint was factually inconsistent with

9

the notion that HHS was a successor because the complaint alleged EngagePoint continued to exist and operate in several states after the assets were sold to HHS. (J.A. 13); *see, e.g.*, *Balt. Luggage*, 562 A.2d at 1294 (rejecting mere continuation theory in part because there was not "a sole corporation remaining after the sale").

Next, although Odjaghian and Nasta alleged facts suggesting commonalities in employed personnel, there were no factual allegations regarding common ownership or that identified common stockholders or directors between EngagePoint and HHS. As the district court noted, Appellants relied on the transfer of employees from EngagePoint to HHS, an insufficient factor standing alone given the totality of the circumstances. *See Acad. of IRM*, 687 A.2d at 679 (rejecting mere continuation theory where no shareholder of predecessor corporation held any ownership interest in successor and "only transfusion from old to new was at the level of employees").

Further, Appellants contend the short timing and manner in which the public auction sale occurred did not allow for competitive bids from other prospective purchasers. To the contrary, as argued by HHS and White, Odjaghian and Nasta failed to allege any facts in their complaint concerning "insufficient consideration." *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Regardless, the district court found the consideration that HHS paid to be valid and nothing in the record before this Court suggests that was in error. (J.A. 163); *see Acad. of IRM*, 687 A.2d at 680 (finding that creditor taking over insolvent debtor to collect bona fide debt pursuant to valid, perfected security interest constituted sufficient

10

consideration from purchaser to seller).  Appellants argue that the issue presented is distinguishable from *Academy of IRM* considering that case contained significant evidence of fair consideration and the sale of assets took place over the course of several months. (App. Br. at 19-20).  However, as noted above, Odjaghian and Nasta failed to allege any facts highlighting insufficient consideration in their complaint nor any unlawful irregularities with the sale.  They only point to the quick timeline involved with the auction. Further, Appellants failed to allege even the possibility of another bidder who would have paid a higher price for EngagePoint and its assets.

Although Appellants alleged some facts tenuously pointing to a continuity of business enterprise between EngagePoint and HHS, their complaint lacks the required allegations to support a continuity of corporate entity theory as required under Maryland law.  For these reasons, we affirm the district court's dismissal of the wage and hour and breach of contract claims against HHS.

C.

Appellants also take issue with the district court's dismissal of their claim against White.  Specifically, Odjaghian and Nasta argue their complaint stated a plausible claim against White as an "employer" under the MWPCL.  Initially, the parties disagree as to the test this Court should employ to evaluate this assignment of error.  Appellants urge adoption of the analysis set forth in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017).  There, this Court established the standards for determining whether a joint employment relationship exists and whether a worker is an employee or independent contractor in the context of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-

11

209. *Salinas*, 848 F.3d at 140-42, 150. Appellees urge use of the test established in *Campusano v. Lusitano Construction LLC*, 56 A.2d 303 (Md. Ct. Spec. App. 2012). That court developed a four-factor economic reality test to determine whether an individual or entity is an employer under the FLSA and MWPCL. The court noted that an individual's ownership interest also is an important factor to consider. *Id*. at 308-10; *see also Roley v. Nat'l Pro. Exch., Inc.*, No. TDC-18-0152, 2020 WL 4207574 (D. Md. July 22, 2020) (applying *Campusano* test and finding no individual liability).[3]

However, this Court need not resolve this dispute here. Odjaghian and Nasta's complaint is fatally flawed. As the district court found, Appellants' complaint did "not allege that . . . White was involved in the payment of [Appellants'] wages" and, therefore, failed to state a claim for which relief could be granted. The MWPCL focuses on "the [employer's] duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment." *Friolo v. Frankel*, 819 A.2d 354, 362 (Md. 2003). The MWPCL defines an "employer" as "any person who employs an individual . . . or is a successor of the person." Md. Code Ann., Lab. & Empl., § 3-501(b). The "definition[] . . . contemplates some sort of contractual relationship *involving the payment of wages in exchange for services*." *Watkins v. Brown*, 173 F. Supp. 2d 409, 414 (D. Md. 2001) (emphasis added). "The plain language, general purpose[,] and clear intent of the MWPCL do not support an interpretation of the word 'employer' that would include a mere

---

[3] Appellees submitted *Roley* as pertinent supplemental authority to this Court on September 2, 2020. That case is currently on appeal to this Court.

supervisor of another employee." *Id.* at 415-16; *see Caseres v. S & R Mgmt. Co.*, No. 12-cv-01358-AW, 2012 WL 5250561, at \*4 (D. Md. Oct. 24, 2012) ("Courts analyzing the MWPCL have rejected any interpretation that would encompass supervisors, officers, and other agents acting on behalf of the corporate employer." (citing *Watkins*, 173 F. Supp. 2d at 416)).

Reading Appellants' allegations in the light most favorable to them, as we are required to do, clearly shows that EngagePoint employed Appellants and that White acted on behalf of EngagePoint. For example, Appellants alleged they were employees of EngagePoint (J.A. 7, 10), they had "written contracts with EngagePoint" (J.A. 10), "EngagePoint fired [them] without cause as a cost-saving measure," and "EngagePoint entered into severance agreements with them" (J.A. 7, 12; *see also* J.A. 67 ("Plaintiff Odjaghian was an employee of EngagePoint from March 1, 2007 until March 15, 2017. Plaintiff Nasta was an employee of EngagePoint from November 2, 2015 until March 15, 2017.")). Odjaghian and Nasta also alleged "White informed [them] that their employment was terminated . . . because the company could not continue to pay their salaries" (J.A.12), and the proceeds of the sale to HHS did not generate sufficient funds to satisfy EngagePoint's obligations under the severance agreements (J.A. 13). Although Appellants maintain EngagePoint, Brevet and White were their employers under the MWPCL, the facts alleged in the complaint do not plausibly support that legal conclusion. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) ("We do note . . . that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint." (citation omitted)).

13

D.

Lastly, Odjaghian and Nasta contend the district court erred in dismissing their case with prejudice without allowing them an opportunity to amend the complaint. (Appellants' Br. at 11). Although Appellants maintain the sufficiency of their allegations, they argue on appeal they should have been provided the opportunity to correct any insufficiencies because such an amendment would not be futile. (Appellants' Br. at 12).

The Federal Rules of Civil Procedure permit amendment of a pleading as a matter of course within certain time parameters and allow subsequent amendments with leave of the court. Fed. R. Civ. P. 15(a). However, Appellants did not seek to amend their complaint as a matter of course within the time permitted under Rule 15(a)(1), nor did they later seek the district court's leave to file an amended complaint under Rule 15(a)(2). Appellants attempted to expand the factual allegations in support of the MWPCL claim in their response to the motion to dismiss. (*See, e.g.*, J.A. 66 (noting "White . . . exercised sufficient control over the unlawful conditions of [their] employment to be liable . . . [under] the MWPCL"); J.A. 67 ("EngagePoint, through its CEO Bradley White, fired [Appellants] and agreed to pay them . . . [under the severance agreements."); J.A. 74 ("It is reasonable to infer that [White,] the [chief executive officer] of EngagePoint[,] had the power to direct, control, or supervise [Appellants]."); J.A. 76-78). However, "it is . . . well-established that parties cannot amend their complaints through briefing or oral advocacy." *Broadlands Homeowner's Ass'n*, 713 F.3d at 184-85. Further, as HHS and White point out (Appellees' Br. at 34-35), "[r]egardless of the merits of the desired amendment, a district court does not abuse its discretion by declining to grant a motion that was never

14

properly made," *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (internal quotation marks omitted); *see Willner v. Dimon*, 849 F.3d 93, 114 (4th Cir. 2017) (same). Considering the deferential abuse of discretion standard of review applicable here and Appellants' failure to seek relief below under Rule 15, we see no basis to set aside the district court's conclusion.

IV.

For the foregoing reasons, we affirm the district court's order.

*AFFIRMED*